(No. 54954.—

BOB NEAL PONTIAC-TOYOTA, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Harris Thomas, Appellee).

*Opinion filed March 16, 1982.*

Goldberg, Fohrman & Weisman, Ltd., of Chicago (Howard J. Ansorge, of counsel), for appellant.

J. Michael Madda, of Chicago (Mark P. Matranga, of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

In this workmen's compensation case, the arbitrator found that Harris Thomas (claimant) suffered accidental injuries on July 12, 1978, that arose out of and in the course of his employment with Bob Neal Pontiac-Toyota, Inc. (respondent), and awarded him $186.67 per week for 24 2/7 weeks of temporary total disability, $186.67 per week for a further period of 126½ weeks for 35% permanent loss of use of the left hand and a fracture of a thoracic vertebra, and $1,529.37 for medical, surgical and hospital expenses. The Industrial Commission affirmed, and the circuit court of Cook County confirmed the Commission. Respondent appeals directly here pursuant to our Rule 302(a)(2) (73 Ill. 2d R. 302(a)(2)), urging that claimant's status was that of an independent contractor rather than an employee at the time of the accident.

Claimant is a retired painter with some 40 years' experience. Prior to his retirement in 1976, he was an employee of the Chicago Housing Authority for 15 years. During 1976 and 1977, he worked periodically for a decorating company for which he was paid the union scale of approximately $11 an hour. In May 1978 he began working for a general contractor, Phillip Jones, who was doing tuckpointing, roof work and other maintenance items for respondent at its showroom on South Stony Island Avenue in Chicago. Jones was apparently hired by respondent for a fixed price or lump sum to do a

specified amount of work, it being Bob Neal's testimony that Jones did not punch in and out on his time clock but agreed to do a "certain amount of work for a certain amount of money." Jones in turn paid claimant an hourly union-scale wage to paint the exterior and interior of the wall that Jones had tuckpointed and the inside rafters. The work for which Jones had been hired was completed in three weeks. He was then informed by Bob Neal that there was additional painting that needed to be done. Jones, however, suggested that Neal deal with claimant directly. Neal testified that he met with claimant, told him that there was about a month's work at the building that claimant had already worked on and that he could also work on a second building that needed to be scraped and painted. Neal was to provide the paint. There was no agreement or further discussion regarding how long claimant would work on the premises. Nor was there any definite understanding as to the amount of work that claimant would perform. It was agreed that claimant would be paid $7 per hour and that his adult son could assist him. He was to be paid an additional $3 per hour for the time that his son worked.

Claimant began working the morning after his conversation with Bob Neal. He testified that the ladder, paint, brushes, rollers, and other equipment were in the storeroom when he arrived at 8 a.m. Neal denied that he furnished any equipment; it was his testimony that some of the equipment was left by Jones and that some of it was provided by claimant. He stated that claimant's son retrieved some of the equipment after the accident. Although there is a conflict in the testimony over whether claimant began punching a time clock initially, it is clear that Neal thought claimant was not working a full day and directed him to use the time clock shortly after he began working. The exhibits demonstrated that he generally worked from 8 a.m. to 5 p.m. with one-half hour to one

hour for lunch. Respondent did not withhold income tax or social security. The copies of claimant's pay checks introduced in evidence had the words "painting contractor" typed thereon.

Claimant was initially instructed to paint the exterior of one part of the building at 7600 Stony Island. About a week later, after he completed this portion, he was moved inside to paint the body shop. The work there was completed in three days. He was then instructed to paint the showroom at 7720 Stony Island. At one point while he was in the process of painting the showroom, Neal instructed him to return to the other building to paint the glass windows. Neal made frequent inspections to determine claimant's progress and tell him the portions and colors of the buildings he wanted painted. For example, claimant testified that on one occasion he was painting the interior of the body shop when Neal told him not to paint the entire length of the wall because he was going to move the body shop. On another occasion, he was told to candy stripe the poles in the showroom. It seems apparent that where claimant was to paint each day, exactly which portions of what building and what colors, and whether he would switch locations were all determined by respondent. A few days before the accident respondent's porter, who ordinarily washed cars and windows and cleaned the showroom, was assigned by respondent to paint the balcony of the showroom because Neal felt that claimant was working too slowly. The accident from which this case arose occurred approximately six weeks after claimant began working and while he was painting a 20-foot pillar in the showroom. The ladder upon which he was standing slipped, causing him to fall to the marble floor.

This case presents the frequently recurring question of whether one is an independent contractor or an employee for purposes of workmen's compensation coverage. We have previously characterized the problem as "one of

the most vexatious and difficult to determine in the law of compensation." (*O'Brien v. Industrial Com.* (1971), 48 Ill. 2d 304, 307; see also *Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 20; Ropiequet & Keefe, *Coverage of the Illinois Workmen's Compensation Act,* 1957 U. Ill. L. F. 169, 185.) Professor Larson acknowledges that "[t]he closest, the most controversial, and the most numerous cases on status are those involving services, such as repair, maintenance, and incidental construction or installation, that are not in the everyday mainstream of production activity *** [including] window-washers, welders, well cleaners, watchmen, house detectives, steeple-jacks, roofers, plumbers, plasterers, painters, mechanics, machinists, engineers, electricians, carpenters, masons, boiler repairmen, blacksmiths, and repairmen of all kinds." (1C A. Larson, Workmen's Compensation sec. 45.31, at 8—174 (1980).) The problem, of course, is that there is no clear line of demarcation, for there can be no inflexible rule applicable to all factual situations. (*Coontz v. Industrial Com.* (1960), 19 Ill. 2d 574, 577; *Immaculate Conception Church v. Industrial Com.* (1947), 395 Ill. 615, 620.) Indeed, the problem in this area generally lies not in the applicable rules, but in the varying nature of the factual situations presented. (See *O'Brien v. Industrial Com.* (1971), 48 Ill. 2d 304, 307.) Since many jobs contain elements of both relationships, and the facts could, depending on their interpretation and the credibility of the witnesses, support either result, we have consistently held that the Commission alone is empowered to evaluate the testimony and draw reasonable inferences therefrom. *Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 20; *Mastercraft Co. v. Industrial Com.* (1974), 58 Ill. 2d 155, 157; *Lawrence v. Industrial Com.* (1945), 391 Ill. 80, 85.) Only in the event its decision is against the manifest weight of the evidence will it be disturbed on review. (*Globe Cab Co. v. Industrial Com.* (1981), 86 Ill. 2d 354, 363; *O'Dette*

*v. Industrial Com.* (1980), 79 Ill. 2d 249, 253; *Goldblatt Brothers, Inc. v. Industrial Com.* (1979), 78 Ill. 2d 62; *Kirkwood Brothers Construction v. Industrial Com.* (1978), 72 Ill. 2d 454, 459.) Not unless the undisputed facts are susceptible of but a single inference does the issue become one of law. *Mastercraft Co. v. Industrial Com.* (1974), 58 Ill. 2d 155, 157; *Henn v. Industrial Com.* (1954), 3 Ill. 2d 325; *Henry v. Industrial Com.* (1952), 412 Ill. 279, 284; *Lawrence v. Industrial Com.* (1945), 391 Ill. 80, 85.

Among the various factors that should be considered in resolving the worker's status are the amount of control and supervision, the right of discharge, the method of payment, the skill required in the work to be done, the source of tools, material or equipment, and the work schedule. (*Globe Cab Co. v. Industrial Com.* (1981), 86 Ill. 2d 354, 362; *Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 20; *Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 97; *Lawrence v. Industrial Com.* (1945), 391 Ill. 80.) Of these factors, the right to control the manner in which the work is done is the most important. *Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 97; *Greenberg v. Industrial Com.* (1961), 23 Ill. 2d 106; *O'Brien v. Industrial Com.* (1971), 48 Ill. 2d 304, 307; *Henn v. Industrial Com.* (1954), 3 Ill. 2d 325; see also Restatement (Second) of Agency sec. 220 (1958); Weidner, *The Workmen's Compensation Act,* 1967 U.·Ill. L.F. 21, 24-25.

In this case, the facts are essentially uncontroverted, the only real conflict being the source of the equipment, and certainly the Commission's decision that an employer-employee relationship existed cannot be said to be contrary to the manifest weight of the evidence. The record demonstrates that respondent not only had the right to control the details of the work, but that he exercised that right considerably beyond the point which would ordinarily have been expected had claimant been an independent

contractor who undertook to produce a given result or to do a specified piece of work in accordance with his own ideas or a plan previously given him. (See *Immaculate Conception Church v. Industrial Com.* (1947), 395 Ill. 615, 620; *Nelson Brothers & Co. v. Industrial Com.* (1928), 330 Ill. 27.) Although the test is based upon the "right" to control rather than the exercise of control, evidence of actual control is the best evidence of the parties' understanding of the employer's right of control, and only the clearest evidence that its exercise exceeded the employer's authority will overcome the inference of its existence. (1C A. Larson, Workmen's Compensation sec. 44.32, at 8–67-68; sec. 44.33, at 8–73 (1980).) In addition, claimant was paid by the hour, was required to punch a time clock as were respondent's other employees, was subject to discharge at any time, generally worked an eight-hour day beginning at 8 a.m. and ending at 5 p.m., devoted his full time to respondent during the period in question, and was otherwise treated as respondent's employee. The only undisputed facts that support a contrary inference are that respondent did not withhold income or social security taxes, and claimant's checks indicated "painting contractor" on their face. These facts cannot offset the factors which decisively show that claimant was an employee and not an independent contractor. (See *Kirkwood Brothers Construction Co. v. Industrial Com.* (1978), 72 Ill. 2d 454, 460 (although the failure to deduct for withholding tax is relevant, it is not decisive); see also *Luby v. Industrial Com.* (1980), 82 Ill. 2d 353, 359 (a statement by the employer cannot foreclose inquiry into the relationship, and the employer's failure to withhold income tax is not a significant factor).) The fact that claimant's son assisted him is not necessarily determinative of the nature of the relationship between the parties, especially where, as here, claimant was paid additional money for that purpose. See *Lawrence v. Indus-*

*trial Com.* (1945), 391 Ill. 80, 87.

Referring to the discussion in our opinion in *Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 21-24, and the concurring opinion in *Globe Cab Co. v. Industrial Com.* (1981), 86 Ill. 2d 354, 363-65 (Ryan, J., concurring), regarding Professor Larson's "relative nature of the work" test, respondent urges that we adopt that test which, he argues, would produce a result contrary to that reached here. We believe, however, that respondent misinterprets that test when he suggests that claimant would be an independent contractor because he was a painter whose services were not of the type used by respondent in the everyday conduct of his business of selling and servicing automobiles. Professor Larson emphasizes that "[t]he nature of the claimant's work, in the abstract, is seldom a safe guide in itself, and for this reason it is dangerous to rely on precedents classified solely by the character of the worker's job ***." (1C A. Larson, Workmen's Compensation sec. 43.52, at 8—19 (1980).) "The independence of these artisans is not to be determined by looking at the artisan or job alone, but by judging how independent, separate, and public his business service is in relation to a particular employer." (1C A. Larson, Workmen's Compensation sec. 45.31, at 8—175 (1980).) "If the worker does not hold himself out to the public as performing an independent business service, and regularly devotes all or most of his independent time to the particular employer, he is probably an employee, regardless of other factors." (1C A. Larson, Workmen's Compensation sec. 45.31(a), at 8—175 (1980).) With respect to nonrecurring but substantial services, Professor Larson states that "if *** the thing contracted for is a business service rather than the personal services of the worker, the status is that of independent contractor. Indicia of business service include the simultaneous carrying-on of other contracts; the absence of necessity for the contractor personally to do

any physical work; and the contractor's advertising or holding himself out to the public as furnishing this business service." 1C A. Larson, Workmen's Compensation sec. 45.31(b), at 8—184 to 8—185 (1980).

In this case, claimant did not hold himself out to the public as furnishing an independent business service. He did not advertise his services, had no business cards, did not have a telephone registered in his name, never submitted a bid as a contractor, was required to perform the work himself, except that he could have his son assist him, for which he would be paid additional money, and devoted his full services to respondent over this period. Notwithstanding the different nature of claimant's job relative to the respondent's general business, the Commission's finding that claimant was an employee would not be contrary to the manifest weight of the evidence, even were we to apply Professor Larson's rationale as respondent requests.

The judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*