THIRD DIVISION
September 27, 2006

No. 1-04-1928, 1-04-2112, consol.

| | | |
|---|---|---|
| JEROME W. MITCHELL, | ) | Appeal from the |
| | ) | Illinois Human Rights |
| Petitioner-Appellant, | ) | Commission. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF CORRECTIONS, | ) | No. 1993CF1245 |
| | ) | |
| Respondent-Appellant | ) | |
| | ) | |
| (The Human Rights Commission, | ) | |
| | ) | |
| Respondent-Appellee). | ) | |

JUSTICE GREIMAN delivered the opinion of the court:

Petitioner Jerome W. Mitchell and the Illinois Department of Human Resources (the

DHR) filed a complaint with the Illinois Human Rights Commission (the Commission) pursuant

the Illinois Human Rights Act (the Act) (775 ILCS 5/1-101 *et seq.* (West 2002)) alleging that

Mitchell's employers, the Illinois Department of Corrections (the Department) and Prison Health

Services (PHS), a private corporation operating out of Newcastle, Delaware, had discriminated

against him on the basis of race when they did not promote him to the position of dental director.

 PHS settled with Mitchell and was dismissed as a party. After a subsequent hearing, an

administrative law judge (ALJ) filed a recommended order and decision (ROD) finding that

Mitchell had demonstrated that the Department had discriminated against him and was therefore

entitled to damages and that Mitchell was additionally entitled to attorney fees.  The

Commission adopted the ROD.  The Department appealed, contending that the Commission

erred in finding that it was Mitchell′s employer and in finding that Mitchell had proven his discrimination claim, and Mitchell appealed, contending that the Commission had erroneously figured his attorney fees. We consolidated the parties′ appeals.

On October 27, 1992, Mitchell, an African-American, filed a complaint with the DHR alleging that the Department and PHS discriminated against him because of his race when they did not promote him to the position of dental director on October 5, 1992, and instead hired Robert Miller, a Caucasian. After an investigation, the DHR issued a notice finding substantial evidence in support of Mitchell′s complaint.

On July 9, 1996, the DHR filed a complaint with the Commission on Mitchell′s behalf alleging that the Department and PHS were employers under the Act, that they were "joint employers" of Mitchell and that their reasons for not hiring Mitchell were pretextual. The Department answered, admitting that it was an employer within the meaning of the Act but denying that it was Mitchell′s employer or joint employer. PHS answered the complaint but then settled with Mitchell. PHS was subsequently dismissed as a party on Mitchell′s motion.

In a joint prehearing memorandum, Mitchell and the Department agreed that both PHS and the Department were employers within the meaning of the Act. Under the Act, an employer is defined as:

> "(a) Any person employing 15 or more employees within Illinois during
> 20 or more calendar weeks within the calendar year of or preceding the alleged
> violation;
>
> ***

1-04-1928, 1-04-2112 (consol.)

(c) The State and any political subdivision, municipal corporation or other

governmental unit or agency, without regard to the number of employees[.]" 775

ILCS 5/2-101(B)(a), (c) (West 2002).

However, though the Department admitted to being an employer, it denied that it was

Mitchell's employer. Mitchell and the Department further acknowledged that the Department

and PHS had contracted for PHS to provided health care services at Pontiac and Dwight

Correctional Centers, that Mitchell was hired by PHS pursuant to its contract with the

Department to provide health care services, that the Department denied that its employees had

input in the decision not to hire Mitchell as the dental director, and that PHS had admitted that

the Department had authorization to approve or disprove PHS's hiring decisions and that PHS

was bound by the Department's decision.

A hearing was conducted on the complaint before an ALJ in October and November

1996. During the hearing, it was ascertained that the Department had contracted with PHS to

provide medical care for its inmates. Pursuant to the contract between the Department and PHS,

PHS's final selection of employees to provide the medical care and those employees' continued

employment were subject to approval by the Department, the Department was to perform a

background check of all employees, and the employees were required to meet the Department's

minimum standards of performance, to comply with the Department's rules, to undergo

Department training, and to sign in and out of work with the Department. Pauline Sohn, a

Department employee, confirmed that the Department conducts a background check on all health

care employees, provides training for those employees, and receives minutes of the dental

1-04-1928, 1-04-2112 (consol.)

department's monthly staff meetings and that she personally reviews health care employees' absences. Sohn denied involvement in the decision to hire Miller rather than Mitchell. Jack Hartwig, the Pontiac assistant warden, testified that it was his duty to make sure that the dental care unit was operating pursuant to Department rules and that inmates received a certain standard of dental care. Hartwig denied having any involvement in the decision to hire Miller and further testified that PHS would have made that decision. Dr. Owen Murray, the medical director of PHS, testified that Beverly Clark, a PHS employee, had made the decision to hire Miller, but that he and Sohn were involved in the selection process. Clark denied making the decision to hire Miller. Miller, himself, could not remember who had hired him, but he did testify that the announcement that he had been hired was on Department stationery but was signed by Murray.

Because the ALJ who was present at the hearing left the Commission, the parties stipulated to the accuracy of the transcript of the hearing and to the deposition of Murray. On February 5, 2002, a new ALJ issued a recommended liability determination in the case finding that Mitchell had proven a *prima facie* case of discrimination and that the Department had failed to articulate a lawful nondiscriminatory reason for its hiring decision. The ALJ recommended that the Department be held liable for back pay in the amount of $35,956.60 and for reasonable attorney fees and costs and allowed the Department to file a motion to set off the amount paid in settlement by PHS from the amount for which it was liable to Mitchell.

Mitchell filed an accounting of his attorney's costs and fees and the Department filed a motion for a setoff. Mitchell's accounting claimed costs totaling $4,664.24 and fees totaling $220,450.

˅4˅

1-04-1928, 1-04-2112 (consol.)

After hearing arguments and evidence concerning the motion and the attorney fees, the ALJ, finding the requested costs and fees unreasonably high, issued the ROD in which he recommended that $15,030 be set off against the gross amount of attorney fees, that the Department be ordered to pay Mitchell's attorney $66,621.60 in attorney fees and $2,547.39 in costs and that the Department additionally be held liable for back pay in the amount previously recommended. The ALJ also specifically found that because it exercised control over Mitchell, the Department was his employer.

Thereafter, Mitchell filed motions requesting an additional $23,950 in attorney fees for 119.75 hours spent in defense of the fee petition and an additional $73,600 for 368 hours spent on prosecuting the case solely against PHS.

The Commission declined to review the matter and, accordingly, the ROD became the Commission's decision on April 14, 2004. The Commission denied Mitchell's motion for a rehearing *en banc* on the issue of attorney fees and costs on June 23, 2004.

Thereafter, the Department appealed, contending that the Commission erred in finding that Mitchell was its employee and in finding that Mitchell had proven his discrimination claim. Mitchell also appealed, contending that the Commission erred in refusing to grant the requested attorney fees. We consolidated the parties' appeals.

First, though the Department admits to being an employer under the Act, the Department contends that because it did not exercise control over Mitchell other than that which was required to safely operate the Pontiac prison and because PHS, rather than the Department, paid Mitchell's salary, the Commission's finding that it was Mitchell's employer was erroneous.

˘5˘

Accordingly, the Department concludes, the Commission did not have jurisdiction to address Mitchell's complaint against it.

This issue concerns a mixed question of law and fact. The facts presented before the Commission are not in dispute but the question remains whether, given these facts, the Department was Mitchell's employer within the meaning of the Act. "Mixed questions of fact and law are subject to reversal only when deemed 'clearly erroneous.' [Citation.] A decision is 'clearly erroneous' when the reviewing court is left with the definite and firm conviction that a mistake has been committed." American Federation of State, County and Municipal Employees, Council 31 v. State Labor Relations Board, 216 Ill. 2d 569, 577-78 (2005).

The Act provides that it is a civil rights violation for any employer to refuse to promote an employee on the basis of unlawful discrimination. 775 ILCS 5/2-102(A) (West 2002). Section 8-102 of the Act grants the Commission the power to hear and decide complaints filed in conformity with the Act. 775 ILCS 5/8-102(G) (West 2002). The Act defines an employee as "[a]ny individual performing services for remuneration within this State for an employer" (775 ILCS 5/2-101(A)(1) (West 2002)). "The term 'jurisdiction,' although not strictly applicable to an administrative body, may be used to designate the authority of the administrative body to act." Byington v. Department of Agriculture, 327 Ill. App. 3d 726, 730 (2002). In determining whether the Commission has authority to act in a matter in which an employer denies that a petitioner was its employee, we look both to the element of remuneration, as referred to in the Act, and to the common-law factors for determining whether a worker is an employee. See Wanless v. Illinois Human Rights Comm'n, 296 Ill. App. 3d 401 (1998) (appellate court affirmed

1-04-1928, 1-04-2112 (consol.)

dismissal of complaint filed under the Act for lack of jurisdiction, holding that petitioner, a member of a bank's board of directors, the bank's vice president and an attorney with a firm that represented the bank, was not an employee of the bank for purposes of the Act when he did not receive remuneration for his position as director or vice president and when the bank paid petitioner's law firm , not petitioner personally, for legal services and had no control over the means and methods of the performance of legal services on behalf of the bank).  Common-law factors to consider in examining a worker's potential status as an employee include "the amount of control and supervision, the right of discharge, the method of payment, the skill required in the work to be done, the source of tools, material or equipment, and the work schedule."  Bob Neal Pontiac-Toyota, Inc. v. Industrial Comm'n, 89 Ill. 2d 403, 410 (1982).  Of these, control of the manner in which work is done is considered the most important.  Bob Neal, 89 Ill. 2d at 410.   When analyzing claims of discrimination under the Act, we may look to the standards applicable to analogous federal claims.  Wanless, 296 Ill. App. 3d at 404, citing Valley Mould & Iron Co. v. Illinois Human Rights Comm'n, 133 Ill. App. 3d 273 (1985).

We find two federal cases particularly helpful in our analysis of the Department's contention.  In the first, Zinn v. McKune, 143 F.3d 1353 (10th Cir. 1998), a nurse who was employed by a private corporation that had contracted with the Kansas Department of Corrections (the Kansas Department) to provide medical services to inmates filed a federal employment discrimination claim against the Kansas Department.  The federal district court determined that the private corporation, rather than the Kansas Department, was the nurse's employer and therefore dismissed the nurse's complaint.

1-04-1928, 1-04-2112 (consol.)

On appeal, the court first noted that a petitioner's employment status is both a jurisdictional issue and a substantive aspect of a petitioner's claim and concluded that, in order to survive summary dismissal, the nurse was required to show that the Kansas Department was an employer and that she was its employee. In determining whether the nurse was an employee of the Kansas Department, the court looked to common-law factors that are similar to those relied upon under Illinois law, including the kind of occupation in issue, the skill required for that occupation, which party furnishes the equipment used at the place of work, the length of time the nurse had worked, the method of payment, the manner in which the nurse's employment could be terminated, whether annual leave was afforded, whether the work was an integral part of the business of the Kansas Department, whether the nurse accumulated retirement benefits, whether the Kansas Department payed social security taxes and the intention of the parties. The court noted that the most important indicator of an employer-employee relationship was control.

In the case before the Zinn court, the private corporation and the Kansas Department had entered a contract which explicitly provided that the corporation's employees were not employees of the Kansas Department. However, the corporation's employees working at Kansas Department facilities, such as the nurse, were required to comply with rules set out by the Kansas Department, were supervised by Kansas Department employees to the extent that their activities implicated the safety and security of prison facilities, and their records were audited by Kansas Department employees to ensure that they met the Kansas Department's specifications. Additionally, Kansas Department employees were permitted to remove the corporation's employees from prison facilities. The Kansas Department also controlled the inventory of

medical supplies and monitored the corporation's employees' movements in and out of prison facilities. The corporation's employees' salaries and benefits were paid by the corporation, not by the Kansas Department, and hiring and firing of the corporation's employees was controlled by the corporation, not by the Kansas Department.

> The court found that the Kansas Department's
>
> "interest in controlling who and what goes into and out of the clinic and at what time clearly relates to the safety and security of the prison, as does its interest in maintaining an accurate 'sharps' inventory and adequate medical supplies throughout the prison. Similarly, [the nurse's] performance of on-site nursing duties using [Kansas Department] facilities and equipment serves the [Kansas Department's] interest in operating the correctional facility in a manner which ensures the safety and security of employees and inmates alike. Finally, the [Kansas Department's] interests in controlling [the nurse's] working hours and access to the facility serve these same purposes." Zinn, 143 F.3d at 1358.

The court further found that the contract language between the Kansas Department and the private corporation demonstrated that the parties intended the Kansas Department to retain control over its facilities and to that end, and to a limited extent, over the corporation's employees assigned to those facilities. However, because its relationship with the nurse was defined by the contract, to the extent that it was authorized to control aspects of the nurse's work, the Kansas Department was merely exercising its contractual rights. The court, therefore, affirmed the district court's dismissal of the complaint, finding that the nurse had not presented

1-04-1928, 1-04-2112 (consol.)

sufficient evidence that the Kansas Department exercised the requisite degree of control over the nurse's professional nursing services and that the measures imposed to ensure security and safety, while they required the nurse to fulfill certain conditions, did not rise to the level of control necessary for a finding that the Kansas Department was, in fact, the nurse's employer.

More recently, the Seventh Circuit Court of Appeals reached the same conclusion as the Tenth Circuit in the very similar case of Hojnacki v. Klein-Acosta, 285 F.3d 544 (7th Cir. 2002). In Hojnacki, a doctor who had been employed by a private corporation that had contracted with the Department to provide medical services to inmates filed a complaint in federal court alleging that her due process rights were violated when, as a state employee, she was defamed when she was discharged from her employment, preventing her from obtaining other government employment. To state this claim, the doctor was required to prove that she was an employee of the Department. The federal district court found that the doctor was not a Department employee and summarily dismissed her complaint.

On appeal, the Hojnacki court noted that, in determining whether the doctor was a Department employee, it would look to several common-law factors including the degree of control the Department exercised over the doctor's work, the nature and skill required to do the doctor's job, which party had responsibility for the cost of operation, provision of supplies and maintenance of the workplace, whether the Department paid the doctor's salary and provided her benefits and the duration of the doctor's employment.

The court first noted that the contract between the Department and the private corporation provided that the doctor was not a Department employee. Nonetheless, weighing in

˘10˘

favor of a finding that the doctor was a Department employee was the fact that she had worked at the Department for three years, during which time the private healthcare provider had changed. Each time a new provider signed on to provide health care services to the Department, the doctor signed a contract with the new provider. However, the facts that the doctor did not receive medical training from the Department and that the private corporation, not the Department, paid the doctor's wages and provided the doctor's benefits weighed in favor of a finding that the doctor was not a Department employee. The fact that the Department and the private corporation shared the responsibility of supplying and maintaining the medical equipment was inconclusive.

Concerning the most significant factor of control, the court noted that he Department set the doctor's working and on-call hours. The Department additionally required the doctor to complete a training program, to participate in a committee dedicated to assuring that the inmates received quality care and to insuring safety and to submit to a monthly review of all mortality cases. The Department also specified what information should be included on admission and discharge forms, how often to examine the inmates, what questions should be asked of the inmates and what behavior should be observed. Nonetheless, the court found that these procedural requirements "merely specify [the doctor's] duties as medical director; they do not control the manner in which she is to perform those duties." Hojnacki, 285 F.3d at 551. The court found that " 'one can "control" the conduct of another contracting party by setting out in detail his obligations; this is nothing more than the freedom of contract. This sort of one-time "control" is significantly different than the discretionary control an employer daily exercises over

1-04-1928, 1-04-2112 (consol.)

its employees' conduct.' " Hojnacki, 285 F.3d at 551, quoting Equal Employment Opportunity Comm'n v. North Knox School Corp., 154 F.3d 744, 748 (7th Cir. 1998). Accordingly, the court found that the factor of control weighed in favor of a finding that the doctor was not the Department's employee. Because the other factors largely balanced one another out, the court found that the doctor was not the Department's employee and affirmed the summary dismissal of her complaint.

Although our research has not revealed an Illinois case addressing the exact issue of the employment status of a prison health care worker in the context of an employment discrimination claim, our supreme court's recent decision in American Federation also influences our decision in this case. In American Federation, before the Illinois State Labor Relations Board, the union, which represented health care workers, sought to demonstrate that the private corporation which had contracted to provide medical services to the Department and the Department itself were joint employers of the health care workers. The Board found that the Department was not a joint employer because it exercised little meaningful control over the workers while the private corporation controlled the essential terms and conditions of their employment directly and substantially. The appellate court reversed, finding that the Department exercised sufficient control over the workers to be considered their joint employer, and the union appealed to the supreme court.

The supreme court observed that the test for determining the existence of joint employers is whether two employers exert significant control over the same employees such that they share those matters governing essential terms and conditions of employment. Factors to consider in

making such a determination include the employer's role in hiring and firing, in promoting and demoting, in setting wages and hours, in disciplining the workers and in providing actual day-to-day supervision and direction.  Again, in this context, the essential element in the analysis is " 'whether a putative joint employer's control over employment matters is direct and immediate.' "  American Federation, 216 Ill. 2d at 580, quoting Airbourne Freight Co., 338 N.L.R.B. 597, 597 n.1 (2002).

In the case before the supreme court, the evidence showed that the Department had no involvement in the hiring and firing of the health care workers and that the worker's wages were paid by the private corporations. However, the Department conducted background investigations of all workers.  While performance evaluations of workers were initially completed by the private corporations, they were subsequently forwarded to the Department and the Department was permitted to make additions to those evaluations.  Similarly, time-off requests were initially made to the private corporations; however, the requests were forwarded to the Department, which was permitted to make a recommendation at to whether the requests should be granted. Though the Department did not have authority to fire a worker, the wardens of each Department facility were permitted to issue stop orders denying health care workers from entering the facilities.

The court found that the elements of control exercised by the Department did not raise it to the level of joint employer.  Favorably citing Hojnacki, the supreme court observed that in exercising control over the workers, the Department was simply exercising the rights it had been granted by virtue of its contracts with the private corporations.  Moreover, much of the control

the Department exercised over the workers was simply for safety and security purposes and the Department's enforcement of its prison rules did not make it the workers' employer.

The facts of this case are essentially the same as those of <u>Zinn</u>, <u>Hojnacki</u> and <u>American Federation</u>. As in <u>Zinn</u> and <u>Hojnacki</u>, the contract between the Department and PHS states:

> "Neither [PHS] nor any person employed by [PHS] to perform services under this
> agreement shall be deemed to be an agent or employee of the [Department].
> Further, neither [PHS] nor any employees of [PHS] shall be entitled to participate
> in any programs designed to benefit employees of the State of Illinois,
> Department of Corrections."

Nonetheless, as in the cases discussed above, the Department required that Mitchell complete Department training, comply with rules dictating how examinations were to be administered and regarding the inventory of medical equipment and medication, undergo a background investigation, sign in and out of the Department's facility and meet minimum standards in providing dental care to the inmates. Additionally, Mitchell's absences were reported to the Department and his hours were set by the Department. Department staff members received minutes from staff meetings in which Mitchell participated and the Department provided the space and equipment in which Mitchell worked. The evidence presented at the hearing left unclear the Department and PHS's relative roles in the interviewing process of new employees and employees applying for promotion and in the hiring decision process. Additionally, PHS paid Mitchell's salary and provided his benefits.

Though the facts that the Department provided the equipment for Mitchell's work and

dictated his schedule weigh in favor of a finding that Department was Mitchell's employer, the important element of control weighs in favor of a finding that the Department was not Mitchell's employer. In regulating Mitchell's hours, absences and ingress and egress from its facility, as well as his minimum level of performance, the Department was merely exercising his contractual right to regulate those conditions. Furthermore, in requiring Mitchell to follow certain rules and procedures in his treatment of the inmates, the Department was specifying his duties, as was its contractual right to do, but was not controlling the manner in which he performed those duties. Also significant is the fact that, in large part, the control exerted over Mitchell by the Department stemmed from its unique position as an administrator of correctional facilities and was to ensure the safety and security of the inmates, the facility and the workers therein. Accordingly, consistent with the reasoning and holdings of Zinn, Hojnacki, and American Federation, we find that the relevant factors clearly indicate that the Department was not Mitchell's employer for purposes of the Act. Therefore, the Commission's contrary finding was clearly erroneous and reversal is warranted.

Because we reverse the Commission's finding in its entirety, we need not address the additional contentions of error raised by the Department and Mitchell.

Finally, the Commission's motion that we strike Mitchell's reply brief because its length exceeded that allowed by the Supreme Court Rules (see Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(a), eff. October 1, 2001), which was taken with the case, is granted. However, we think it important to note that, as Mitchell's reply brief solely concerned the issue of attorney fees, our decision to strike it has no affect on our decision in this appeal.

1-04-1928, 1-04-2112 (consol.)

For the above-stated reasons, we reverse the judgment of the Commission.

Reversed.

THEIS, P.J., and KARNEZIS, J, concur.