2024 IL App (1st) 220751-U

No. 1-22-0751

Order filed August 2, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER BEAN, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Educational |
| | ) | Labor Relations Board. |
| v. | ) | |
| | ) | |
| STATE UNIVERSITIES CIVIL SERVICE SYSTEM, | ) | No. 21 CA 0061-C |
| | ) | |
| Respondent-Appellee. | ) | |

JUSTICE LYLE delivered the judgment of the court.
Justices Mikva and Navarro concurred in the judgment.

**ORDER**

¶ 1   *Held*:   On direct administrative review, we affirm the judgment of the Illinois Educational Labor Relations Board finding that it lacked jurisdiction over the State Universities Civil Service System.

¶ 2   The Illinois Educational Labor Relations Board (Board) dismissed Petitioner Christopher Bean's unfair labor charge against Respondent the State Universities Civil Service System (University System), finding that it did not have jurisdiction over the University System because it was not an educational employer under the terms of the Illinois Educational Labor Relations Act

(Act) (115 ILCS 5/1 *et seq.* (West 2020)). Mr. Bean had previously been discharged from his position at the University of Illinois, Chicago (UIC) Hospital. The University System University Civil Service Merit Board (Merit Board) upheld Mr. Bean's discharge, and Mr. Bean filed an unfair labor charge against the University System with the Board. Mr. Bean, *pro se*, now appeals from the Board's dismissal of his unfair labor practice charge against the University System. For the reasons that follow, we affirm the Board's dismissal.

¶ 3                              I. BACKGROUND

¶ 4       Mr. Bean was hired by UIC as a food services sanitation laborer for the UIC Hospital & Health Science System in June 2012. His responsibilities included distributing patient meal trays, disposing of garbage, and cleaning service equipment. On December 20, 2018, UIC informed Mr. Bean that he was being placed on administrative leave pending an investigation of his conduct following two incidents. In the first incident, on December 18, 2018, Mr. Bean told his supervisor and a coworker that they were "full of s***" after he attempted to deliver a food tray that was missing carrots. Mr. Bean's supervisor told him that profanity was not acceptable at work and that his language violated the code of conduct. The second incident took place the following day. Another supervisor observed Mr. Bean incorrectly placing silverware upside down on the patient trays. Mr. Bean's supervisor told him that they had previously discussed this issue and he needed to be more careful to place the utensils correctly. Mr. Bean became "loud and irate" and yelled at his supervisor. The supervisor then examined the trays that Mr. Bean had prepared and observed a dirty knife. She asked Mr. Bean to replace the dirty knife with a clean knife. Mr. Bean grabbed a clean knife and then threw it at the supervisor. The knife bounced off the cart with the trays and landed on the floor. On March 7, 2019, UIC informed Mr. Bean that he would be suspended without pay for 30 days following its investigation of these incidents.

¶ 5     On January 21, 2020, UIC sent Mr. Bean a notice that the board of trustees intended to initiate discharge proceedings against him. The proposed charges were based on tardiness, unexcused absences, failure to follow departmental and employee rules and regulations, theft of UIC time, failure to follow directives, negatively impacting patient care, disruption to the department's daily workflow and operations, and unethical behavior. The notice detailed the dates and times Mr. Bean had been tardy to work or had an unexcused absence from work. Mr. Bean was further informed that he could respond to the charges by either requesting a conference to take place on January 27, 2020, or by filing a written response. Mr. Bean did not respond.

¶ 6     On February 11, 2020, UIC served Mr. Bean with written charges for discharge, informing him that he had been discharged for the reasons stated in the notice of the discharge proceeding.

¶ 7     On February 25, 2020, Mr. Bean submitted a request for a hearing on the written charges for discharge with the University System. The University System was created by the State Universities Civil Service Act (110 ILCS 70/0.01 to 70/46 (West 2020)) to "establish a sound program of personnel administration" for state universities, including UIC (*id.* § 36b). The University System is controlled by the Merit Board. *Id.* The Merit Board is charged with holding hearings for employees at State Universities who have been discharged where the discharged employee makes a written request for such a hearing within 15 days of the written charges upon him or her (110 ILCS 70/36o (West 2020)).

¶ 8     In his request for a hearing to the University System, Mr. Bean asserted that his supervisor falsely accused him, and harassed and humiliated him in front of his coworkers. Mr. Bean attached to his request statements from his coworkers stating that he was a good worker who had not been involved in any misconduct. On October 5, 2020, the University System sent Mr. Bean a letter acknowledging receipt of his request for a hearing on the written charges for discharge. On October

7, the University System sent Mr. Bean a letter describing the procedure for the hearing and explaining that the hearing would take place remotely on October 13 via "WebEx," where each person must attend using both audio and video. The University System sent Mr. Bean another letter on October 12, informing him that the hearing date had been moved to October 23, and again providing the information for the WebEx meeting. The University System sent Mr. Bean a third letter on October 21, confirming the new hearing date and again informing Mr. Bean of the procedure for the hearing. The University System also enclosed exhibits submitted by UIC for possible use at the hearing.

¶ 9     On October 23, 2020, the University System sent Mr. Bean a notice regarding his failure to appear at the hearing. The notice indicated that the hearing was set to take place that morning via WebEx but Mr. Bean did not appear. The UIC attorney attempted to contact Mr. Bean by telephone, but Mr. Bean did not answer the phone. The attorney eventually spoke to someone by phone who told him that Mr. Bean had gone "downtown." The hearing commenced in Mr. Bean's absence. The notice stated that Mr. Bean had three days to respond to the notice to provide a reasonable explanation for his failure to attend the hearing pursuant to section 250.110 of the Illinois Administrative Code. 80 Ill. Adm. Code 250.110(f)(12)(A) (2020). If Mr. Bean provided a reasonable explanation for his failure to attend, the hearing would be reconvened at a later day. If Mr. Bean did not provide such an explanation, his discharge from UIC would be effective as of February 26, 2020.

¶ 10    Mr. Bean responded to the failure to appear notice on October 27, 2020, stating that he was misinformed by a Daley Center employee that their computers were available for public use for video and audio. Upon arrival, he learned that the computers did not have video capabilities. Mr.

Bean walked to the Harold Washington Library, but did not have sufficient time or "computer skills" to access the WebEx meeting on time.

¶ 11    The University System responded to Mr. Bean's letter two days later denying his request to reconvene the discharge hearing. The letter noted that Mr. Bean had received three separate notices that he needed to secure an "audio/video" connection for the hearing, but he failed to do so. Mr. Bean also failed to demonstrate that he made a reasonable effort to contact UIC or the University System prior to the commencement of the hearing.

¶ 12    On February 4, 2021, Mr. Bean filed an unfair labor charge with the Board against the University System pursuant to section 14 of the Act. 115 ILCS 5/14 (West 2020). Mr. Bean alleged that UIC used his previous 30-day suspension to justify the discharge and that two employees from the University System were "responsible" for his termination. He noted that on January 27, 2020, he was scheduled for a union meeting that was eventually rescheduled for February 5.[1]

¶ 13    The University System filed a motion to dismiss the unfair labor charge because it was filed more than six months after the event or conduct which was the subject of the charge, because the charge did not contain a clear and complete statement of facts supporting the alleged unfair labor practice, and because the University System was not Mr. Bean's employer at the time of the alleged unfair labor practice and therefore was not subject to the Board's jurisdiction. With regard to untimeliness, the University System contended that the Illinois Administrative Code required a charge to be filed within 6 months after the alleged unfair labor practice occurred. The University System noted that Mr. Bean contended that the wrongful actions occurred on January 21, 2020, but he filed his charge on February 4, 2021. The University System asserted that the charge was

_____

[1]Mr. Bean presumably intended to allege that he could not request a conference to respond to UIC's notice of discharge proceedings on January 27, 2020, because he had a union meeting that day.

therefore untimely. The University System further maintained that the charge was vague and did not provide any indication as to what Mr. Bean alleged to be an unfair labor practice.

¶ 14    Finally, the University System contended that it was not an employer under the Act because it is a regulatory agency, not an employee organization or labor organization. The University System pointed out that UIC was Mr. Bean's employer, not the University System. The University System maintained that its involvement with Mr. Bean was related to the discharge proceedings brought against him by UIC, not through an employee-employer relationship. The University System contended that Mr. Bean's charge was merely an attempt to circumvent the appeal process from its decision which was governed by the Administrative Review Law.

¶ 15    Mr. Bean filed a response to the motion to dismiss noting that he received the discharge notice on February 11, 2020, and "immediately" filed a request for a hearing on February 25, 2020. He contended that he should have received a decision on his request on February 26, 2020, but instead received a termination letter on October 29, 2020. He maintained that he contacted the University System in September 2020 because he had not received a decision on the written charges and was informed that he had been terminated on February 26, 2020. He was informed that the University System had not received his February 25, 2020, request, but he later received a notice on October 5, 2020, acknowledging receipt of his request for a hearing. Mr. Bean maintained that his supervisor brought several false charges against him to justify the discharge and that she had provoked and humiliated him in front of his coworkers.

¶ 16    The Board's executive director filed his recommended decision and order on January 21, 2022. The executive director found that the University System was not created pursuant to the Illinois School Code (105 ILCS 5/1-1), its major function was not connected to the provision of educational services, it was not an educational employer under Section 2(a) of the Act (115 ILCS

5/2(a)), and therefore it was not subject to the jurisdiction of Board. The Executive Director recommended that Mr. Bean's charges be dismissed because the Board lacked jurisdiction over the University System. The Board notified Mr. Bean that he had the right to file written exceptions to the recommended decision.

¶ 17    In his exceptions, Mr. Bean contended that the University System failed to raise certain arguments in its motion to dismiss and that the University System violated the Civil Service Act and portions of the Illinois Administrative Code.

¶ 18    On April 22, 2022, the Board affirmed the recommended decision and order filed by the executive director and found that it lacked jurisdiction over the University System. The Board determined that Mr. Bean had failed to raise any arguments in his exceptions that warranted overturing the executive director's dismissal of the charge.

¶ 19    On May 27, 2022, Mr. Bean filed for direct review of the Board's judgment in this court pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017). Rule 335(a) and Section 16(a) of the Act (115 ILCS 5/16(a) (West 2020)) both provide that the petition for direct review must be filed within 35 days from the date of service of the order sought to be reviewed. Accordingly, we find that Mr. Bean filed a timely notice of appeal and that we have jurisdiction to consider this appeal.

¶ 20                                    II. ANALYSIS

¶ 21                                    A. Mr. Bean's Brief

¶ 22    Before we may consider the merits of this appeal, we must first address the state of Mr. Bean's brief. The University System asserts that we should strike Mr. Bean's appellant brief for failure to comply with Supreme Court Rule 341(b)(1) (eff. Oct. 1, 2020). That rule limits the length of an appellant's opening brief to 50 pages or no more than 15,000 words. Mr. Bean's opening

brief is 101 handwritten pages. He asserts in his certificate of compliance and in his reply brief that his opening brief contains only 14,023 words, but the University System disputes Mr. Bean's count, asserting that the brief is more than 15,000 words. Supreme Court Rule 341(b)(2) (eff. Oct. 1, 2020)) permits parties to move to file a brief in excess of the page and word count limitations of Rule 341, but the University System asserts that Mr. Bean did not seek leave under that rule.

¶ 23    In fact, Mr. Bean did file a motion for leave to file a brief in excess of 50 pages on October 19, 2022. In support of his motion, Mr. Bean stated that it was difficult for him to comply with the "recommended requirement" to file a brief that was only 50 pages. He also asserted that the University System had not provided him with all of the "documents." This court denied his motion finding that Mr. Bean had failed to comply with Rule 341(b)(2). That rule requires motions for leave to file a brief in excess of the limitation in Rule 341(b)(1) to state the excess number of pages or words requested and the specific grounds establishing the necessity for excess pages or words. Ill. S. Ct. R. 341(b)(2) (eff. Oct. 1, 2020). Mr. Bean failed to do so in his motion and therefore his motion was denied.

¶ 24    Mr. Bean nonetheless filed a brief far exceeding the page limitation of Rule 341(a), and, despite his assertion to the contrary, the brief clearly exceeds 15,000 words. Mr. Bean's statement of facts alone is 70 pages and consists largely of lengthy quotations from filings or exhibits in the record. Although Mr. Bean included citations to the record as required by Rule 341(h)(6) (eff. Oct. 1, 2020), those citations are written into the margins on the pages, rather than inline with the text, making it difficult to discern which facts are based on which pages in the record. The argument section of Mr. Bean's brief is much the same with extensive quotations and enigmatic record citations. Rule 341(h)(7) provides that evidence should not be copied at length in the argument section of an appellant brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The brief contains no

headings and nearly no distinction between quoted material and Mr. Bean's own words. These deficiencies make it extremely difficult for this court to discern the arguments that Mr. Bean is attempting to raise in this appeal.

¶ 25    Compliance with the supreme court rules regarding briefs is mandatory, and the fact that a party appears *pro se* does not relieve that party of the responsibility of complying as nearly as possible with those rules. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. "*[P]ro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys." *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067 (2009). Where a brief fails to comply with the supreme court rules for appellate briefs, we may, in our discretion, strike the brief. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11; see also *Mitchell v. Department of Corrections*, 367 Ill. App. 3d 807, 817 (2006) (striking the appellant's reply brief because its length exceeded that allowed by the supreme court rules). In this case, however, we opt not to strike Mr. Bean's brief, and will address the arguments he raises on appeal.

¶ 26                              B. Mr. Bean's Contentions on Appeal

¶ 27    In his opening brief, Mr. Bean contends that the six-month time limitation for filing an unfair labor practice claim under section 15 of the Act (115 ILCS 5/15 (West 2020)) does not apply in his case because of the University System's delay in responding to his request for a hearing on his written charges for discharge. He points out that he filed a timely request for a hearing on February 25, 2020, but the University System did not respond to the request until October 2020. He maintains that the University System failed to notify him of the written charges for discharge filed on February 11, 2020, until October 5, 2020. He asserts that we should therefore reverse the decision of Board that he filed his unfair labor practice charge beyond the six months. He also

challenges the factual assertions that gave rise to his discharge, asserting that video evidence did not depict him throwing silverware at his supervisor and that he presented statements from several coworkers regarding his conduct at work. He maintains that he was the victim of a hostile work environment and was subject to bullying and harassment by his supervisors. He also asserts that he was denied an opportunity for a fair hearing, repeating his contentions regarding his inability to access a computer with audio and video capabilities to attend the WebEx hearing on October 23, 2020.

¶ 28    Mr. Bean does not address the Board's jurisdiction over the University System in his opening brief, but does briefly address its jurisdiction in his reply brief asserting that "the [University System's] understanding of the law is totally incorrect" and that the Board had jurisdiction over his unfair labor practice claim. However, Mr. Bean does not raise any argument or cite any authority to support that assertion, instead making only general citations to the Act and the Administrative Code and repeating his argument that he was denied the right to a fair hearing.

¶ 29                              C. The Board's Jurisdiction

¶ 30    The Board dismissed Mr. Bean's unfair labor practice charge solely on the basis that it lacked jurisdiction over the University System. Mr. Bean's contentions regarding the hearing procedure and the allegedly late response to his request for an appeal in February 2020 are relevant only if the Board had the jurisdiction to address these claims.

¶ 31    Our standard of review of the Board's decision depends on whether the issue presented is a question of law, fact, or a mixed question of law and fact. *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14. An administrative agency's decision on a question of law is reviewed *de novo*. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142 (2006). On the other hand, an administrative agency's determination

on a question of fact is afforded great deference and will be reversed only if it is against the manifest weight of the evidence. *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 26 (2007). Finally, we will reverse an agency's determination on a mixed question of fact and law only if we find that the decision is "clearly erroneous." *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 15. A mixed question of fact and law is one "in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). Here, the issue of whether the Board had jurisdiction over the University System requires us to examine the statutory framework of both the Board and the University System. This is a pure question of law that we review *de novo*. See *Beggs v. Board of Education of Murphysboro Community Unit School District Number 186*, 2016 IL 120236, ¶ 52.

¶ 32    The purpose of the Act is to promote "orderly and constructive relationships between all educational employees and their employers." 115 ILCS 5/1 (West 2020). To that end, section 14 of the Act lists conduct by "Educational employers" or "Employee organizations" that may give rise to a claim for unfair labor practices by an employee. *Id.* § 14. Section 15, in conjunction with the Administrative Code, tasks the Board with investigating unfair labor practice claims that an employee files against their employer. *Id.* § 15. "An unfair labor practice charge may be filed with the [Board] by an employer, an employee organization, or an employee." 80 Ill. Adm. Code 1120.20(a) (2020). " 'Educational Employee' or 'Employee' is defined as "any individual *** employed full or part time by an educational employer." 115 ILCS 5/2(b). "Educational Employer" or "employer" means:

"the governing body of a public school district, including the governing body of a charter school established under Article 27A of the School Code or of a contract school or contract turnaround school established under paragraph 30 of Section 34-18 of the School Code, combination of public school districts, including the governing body of joint agreements of any type formed by 2 or more school districts, public community college district or State college or university, a subcontractor of instructional services of a school district (other than a school district organized under Article 34 of the School Code), combination of school districts, charter school established under Article 27A of the School Code, or contract school or contract turnaround school established under paragraph 30 of Section 34-18 of the School Code, an Independent Authority created under Section 2-3.25f-5 of the School Code, and any State agency whose major function is providing educational services. 'Educational employer' or 'employer' does not include (1) a Financial Oversight Panel created pursuant to Section 1A-8 of the School Code[] due to a district violating a financial plan or (2) an approved nonpublic special education facility that contracts with a school district or combination of school districts to provide special education services pursuant to Section 14-7.02 of the School Code, but does include a School Finance Authority created under Article 1E or 1F of the School Code and a Financial Oversight Panel created under Article 1B or 1H of the School Code. The change made by this amendatory Act of the 96th General Assembly to this paragraph (a) to make clear that the governing body of a charter school is an 'educational employer' is declaratory of existing law." *Id.* § 2(a)

Finally, " 'Employee organization' or 'labor organization' means an organization of any kind in which membership includes educational employees, and which exists for the purpose, in whole or

in part, of dealing with employers concerning grievances, employee-employer disputes, wages, rates of pay, hours of employment, or conditions of work." *Id.* § 2(c).

¶ 33    In this case, the University System does not fit the definition of an educational employer or employee organization under the Act. It is not the governing body of a public school district, it was not created by the School Code (105 ILCS 5/1-1 to 1-4 (West 2020)), and its major function is not providing educational services. Instead, it is tasked with developing and implementing a civil service system to "establish a sound program of personnel administration" for state universities. 110 ILCS 70/36b (West 2020). "It tests and provides the names of suitable applicants to the university for its selection. It also sets and oversees the general employment policies of the universities in regard to their nonacademic employees." *American Federation of State, County and Municipal Employees, AFL-CIO v. Illinois Educational Labor Relations Board*, 197 Ill. App. 3d 521, 525 (1990). The University System's services are related to education "only in the sense that the organizations which its serves are universities." *Id.*

¶ 34    The University System is also not an employee organization or labor organization under the Act. It does not exist either in whole or in part to deal with employee-employer grievances, or employee-employer disputes, wages, rates of pay, hours of employment, or conditions of work. Finally, the Board is tasked with resolving unfair labor disputes between educational organizations and *their employees*. See 115 ILCS 5/14, 5/15; 80 Ill. Adm. Code 1120.20(a) (2020). It is undisputed that Mr. Bean was at all times relevant to this dispute an employee of UIC, not the University System. Accordingly, we hold that the Board correctly found that it did not have jurisdiction over the University System.

¶ 35                                    III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the Board.

¶ 37    Affirmed.