In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3013

ERIC TAPLEY,

*Plaintiff-Appellant,*

*v.*

ANDREW CHAMBERS, OFFICER, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois
No. 15-cv-1051 — **James E. Shadid**, *Chief Judge.*

ARGUED SEPTEMBER 21, 2016 — DECIDED OCTOBER 19, 2016

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge*. Plaintiff-appellant Eric Tapley, along with William Hosea and Clifford Pugh, request that we review the district court's decisions in two different cases, one from 2012 (numbered 12-cv-1339) and the other from 2015 (numbered 15-cv-1051). Yet they failed to provide the record from the 2012 case on appeal. For that reason, we dismiss the appeal of that case. We address the merits of the 2015 case only—and we affirm.

## I. BACKGROUND

The record before us leaves much to the imagination. Although Tapley asks us to review two cases, we have the record for only one of them. To outline the history of these two cases, we rely on the *procedural* facts provided in the parties' briefs. We assume the truth of these facts for that limited purpose. But that's as far as we'll go.

Without the required record, we are unable to address the *material* facts of the 2012 case. We do have the record from the 2015 case, and thus will discuss the facts necessary to decide the merits of that appeal.

### A.  Procedural History

This all began with the 2012 case. There, plaintiffs Tapley, Hosea, and Pugh sued the City of Bloomington and Officers Andrew Chambers, Jeff Engle, Michael Gray, John Heinlein, Sara Mayer, Scott Sikora, James Smith, and Brice Stanfield. The plaintiffs brought Fourth Amendment, equal-protection, and *Monell* claims under 42 U.S.C. § 1983. In addition, Tapley brought a malicious-prosecution claim under Illinois law. Tapley's claims arose from several incidents occurring between 2011 and 2012. Hosea's and Pugh's claims involved a single incident occurring on May 24, 2011. The incidents that gave rise to Tapley's claims are unrelated to the incident that brought about Hosea's and Pugh's claims.

The defendants moved for summary judgment on all of these claims. The district court granted that motion in part, dismissing every claim except for Tapley's illegal-seizure claims arising from two traffic stops: one occurring in May 2011 and the other on September 15, 2011. Tapley voluntarily

dismissed those two claims, causing the district court to terminate the case under Federal Rule of Civil Procedure 41(a)(1). The plaintiffs then appealed to this court.

Because Tapley voluntarily dismissed his surviving claims without prejudice, we questioned whether we had appellate jurisdiction. Indeed, a dismissal without prejudice typically does not result in a final and appealable order because the plaintiff is free to refile his claim. *Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001). We invited the plaintiffs to brief the jurisdictional issue. They instead dismissed their appeal on December 9, 2014.

Tapley then filed the 2015 case against Officers Chambers, Heinlein, Sikora, Stanfield, and Mayer. There, Tapley reasserted his illegal-seizure claim arising from the September 15, 2011 incident—one of the claims that he voluntarily dismissed in the 2012 case. He did not refile his other voluntarily dismissed claim from the 2012 case.[1]

Once again, the defendants moved for summary judgment. This time around, the district court granted their motion and dismissed Tapley's claim. Tapley timely appealed that judgment.

*B. Factual Background for the 2015 Case*

The events giving rise to Tapley's claim in the 2015 case occurred on September 15, 2011. The Bloomington Police Department's Street Crimes Unit was surveilling for loud-music

---

[1] On summary judgment, the district court dismissed Tapley's claims against Officer Mayer, whom Tapley conceded was not involved in the September 15, 2011 incident. Nothing in Tapley's briefs or oral argument suggests that Tapley seeks to appeal this ruling. None of the other parties or claims from the 2012 case was involved in the 2015 case.

violations near the intersection of Clinton and Locust streets. Officer Sikora was parked to the south of that intersection when he observed Tapley driving northbound in a red GMC truck. Sikora radioed his fellow officers to inform them that Tapley was playing loud music and to inquire whether anyone wanted to initiate a stop. Officer Stanfield replied that he would try to make the stop. At that time, Stanfield was parked at the Clinton-Locust intersection, across the street from a Price Rite store.

Tapley turned into the Price Rite parking lot, and Stanfield followed him. Tapley went into the store for a brief time before returning to his truck. Stanfield testified that he heard Tapley's music emanating from the truck as Tapley was preparing to drive away. The parties agree that Tapley's music was loud, but dispute whether it was so loud that Stanfield could hear it from over 75 feet away.[2]

Tapley left the parking lot and turned northbound onto Clinton. Stanfield testified that he had difficulty following Tapley because Tapley was driving "at a very high rate of speed." (R. 16-5 at 43–44.) Moreover, Stanfield could hear Tapley's engine rev as Tapley drove away. Stanfield acknowledged that he did not know Tapley's exact speed, but claimed that it was well over Clinton's 30-mile-per-hour limit—somewhere in the 40- to 50-mile-per-hour range. Stanfield testified that he had to drive about 40 miles per hour to catch Tapley.

---

[2] Both Illinois law and a Bloomington ordinance prohibit playing music that is audible outside of a vehicle from 75 feet or more while the vehicle is operating on a highway. 625 ILCS 5/12-611; City of Bloomington, Il. Code ch. 29, art. XI, § 83(b).

Stanfield caught up to Tapley at the intersection of Main Street and Empire. When Tapley saw Stanfield's unmarked cruiser behind him, he turned his music down. Stanfield then stopped Tapley, explaining to him that the stop was for loud music. The two also discussed Tapley's excessive speed.

Soon after, Officers Sikora, Chambers, and Heinlein arrived. Chambers told Tapley to get out of the truck. The parties disagree about what happened next.

Tapley claims that he responded to Chambers by saying, "Well, yes, I can get out of my truck, but why am I getting out of my truck?" (R. 16-1 at 16.) When Chambers explained that the officers had a K9 unit and that they wanted to do a free-air sniff around the truck, Tapley replied, "I understand that, but why are you doing a free air search?" (*Id*.) To that, Chambers replied, "This is what we do," and told Sikora to "[g]et him." (*Id*.) Sikora opened the passenger-side door and placed a Taser on Tapley's temple. Tapley then jumped out of the car with his hands up.

The officers' version of the story is a little bit different. According to them, when Chambers asked Tapley to exit the vehicle, Tapley responded, "[F]uck that."(R. 16-2 at 28); (R. 16-5 at 48). And when Chambers repeated his request, Tapley "just sat there," talking on his cell phone. (R. 16-2 at 28.) Chambers then opened the driver-side door and grabbed Tapley's arm, which Tapley pulled away.[3] Only then did Sikora tell Tapley that, "if [Tapley] didn't get out, he'd get tased." (R. 16-4 at 19.) The officers deny ever pointing a Taser at Tapley.

---

[3] Neither Sikora nor Heinlein saw Tapley pull his arm away.

The officers arrested Tapley for obstruction of justice and resisting arrest. Stanfield performed a search incident to arrest on Tapley while the other officers searched the truck.[4] The government tried Tapley for obstruction, and a jury acquitted him.

## II. ANALYSIS

We first explain why we decline to review the merits of the 2012 case. We then turn to the merits of the 2015 case.

### A. Tapley's, Hosea's, and Pugh's Appeal of the 2012 Case

Plaintiffs Tapley, Hosea, and Pugh[5] seek to appeal the district court's 2012 judgment dismissing Tapley's malicious-prosecution claim and Hosea's and Pugh's Fourth Amendment claim on summary judgment. Plaintiffs did not directly appeal the 2012 case; instead, they seek to bootstrap that case onto Tapley's appeal of the 2015 case, claiming that Tapley's appeal was sufficient to appeal both cases. The defendants disagree and contest our jurisdiction to review the 2012 case. We need not decide whether Tapley's appeal of the 2015 case also gives us jurisdiction over the 2012 case. We instead dismiss the appeal of the 2012 case for the simple reason that we have no record to review it.

The Federal Rules of Appellate Procedure require an appellant who is challenging a district court's finding or conclusion as unsupported by the evidence to "include in the record

---

[4] In the 2012 case, Tapley brought an illegal-search claim, which the district court dismissed on summary judgment. Tapley is no longer pursuing that claim and concedes that it is not at issue on appeal.

[5] Although Hosea and Pugh are not named parties to this appeal, we refer to Tapley, Hosea, and Pugh as "plaintiffs" for purposes of this discussion.

a transcript of all evidence relevant to that finding or conclu-sion." Fed. R. App. P. 10(b)(2). It is apparent from the record—or, more aptly, the lack thereof—that plaintiffs have not satis-fied this requirement. Our review of the appellate docket con-firms that we do not have the 2012 record. Plaintiffs conceded as much in both their briefing and at oral argument. Even so, they ask us to review the district court's dismissal of their claims without the 2012 record. They do not explain how we can do that without access to the evidence contained in that record.

True enough, plaintiffs did include some documents from the 2012 case in the appendix, including the second amended complaint and the district court's order on summary judg-ment.[6] Even if we were to consider these documents, they would not help us. Although the district court's order sum-marizes the type of evidence presented, we cannot evaluate whether the court properly granted summary judgment with-out copies of the exhibits supporting the parties' summary-judgment briefing and the transcripts from oral argument. *See Stookey v. Teller Training Distribs., Inc.*, 9 F.3d 631, 635 (7th Cir. 1993).

Under these circumstances, we have two options. First, we can order plaintiffs to provide the 2012 record. Fed. R. App. P. 10(e); *LaFollette v. Savage*, 63 F.3d 540, 545 (7th Cir. 1995). Or second, we can dismiss the appeal. Fed. R. App. P. 3(a)(2);

---

[6] The issue of whether those documents' inclusion in the appendix is ap-propriate given their absence from the 2015 record is another story. *See United States v. Raymond*, 228 F.3d 804, 809 n.5 (7th Cir. 2000) (granting motion to strike from the appendix documents absent from the record be-fore the district court), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

*Stookey*, 9 F.3d at 635 (7th Cir. 1993). We choose the latter option.

Dismissal is appropriate when a deficient record precludes meaningful appellate review. *LaFollette*, 63 F.3d at 544; *Stookey*, 9 F.3d at 635–36. Dismissal is especially appropriate when, as here, plaintiffs have had ample opportunity to correct this deficiency but have failed to do so. *LaFollette*, 63 F.3d at 545; *RK Co. v. See*, 622 F.3d 846, 853 (7th Cir. 2010). Indeed, plaintiffs have known of this problem at least since receiving defendants' response brief, which requests that we dismiss the appeal because of the incomplete record. *See RK Co.*, 522 F.3d at 853.

Plaintiffs' reply acknowledges that we do not have the 2012 record. Plaintiffs claim, however, that they "orally requested" the district court to send that record to us. (Appellant's Reply Br. at 8.) During oral argument, plaintiffs' counsel clarified that he actually made this request to the district court clerk via telephone.

Even accepting that plaintiffs made that call, nothing in the record before us suggests that plaintiffs filed a motion with the district court to correct or modify the record under Appellate Rule 10(e), as our Circuit Rules require. *See* Circuit Rule 10(b). Had plaintiffs so moved, perhaps the district court would have forwarded the 2012 record to us. Instead, 22 days after plaintiffs filed their reply brief acknowledging the record deficiency, the district court forwarded the long record from the 2015 case only. Since then, plaintiffs have taken no steps to provide us with the 2012 record.

Plaintiffs must convince us that the district court reached the wrong conclusion. They cannot do so without supporting

evidence. Because we do not have the 2012 record, we dismiss the appeal of the 2012 case.

*B.  Tapley's Appeal of the 2015 Case*

We now turn to the merits of the 2015 case. As noted, Tapley brought a § 1983 claim against Officers Chambers, Heinlein, Sikora, and Stanfield, alleging that they violated his Fourth Amendment rights when they seized him on September 15, 2011. The district court dismissed Tapley's claim on summary judgment.

We review this decision *de novo*, drawing our own legal and factual conclusions from the record. *Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 434 (7th Cir. 2004). In our review, we construe all facts and reasonable inferences in Tapley's favor. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772 (7th Cir. 2012). We grant summary judgment only when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014).

As the summary-judgment movants, the officers must establish that there are no genuine issues of fact. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010). They can discharge this burden by (1) negating an essential element of Tapley's claim with affirmative evidence or (2) demonstrating that Tapley's claim lacks supporting evidence. *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). The burden then shifts to Tapley to offer specific evidence showing a genuine issue for trial. *Bank of Commerce v. Hoffman*, 829 F.3d 542, 546 (7th Cir. 2016).

Our analysis begins with the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures… ." U.S. Const. amend. IV. This protection extends to everyday traffic stops, which are "seizures" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). As such, they must be reasonable. And they are reasonable so long as "the police have probable cause to believe that a traffic violation has occurred." *Id*. at 810.

To succeed on his § 1983 claim, Tapley must show that his seizure was *un*reasonable—that is, that the officers had no probable cause to stop and arrest him. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008); *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Based on the undisputed facts in the record, we conclude that Tapley cannot make this showing.

We begin with the initial stop, which Stanfield admitted was for loud music. It is debatable whether there was probable cause to stop Tapley for that reason. Even so, the facts in the record show that there *was* probable cause to stop Tapley for speeding.

"When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the stop." *United States v. Garcia-Garcia*, 633 F.3d 608, 613 (7th Cir. 2011). To determine whether this belief is reasonable, we consider "the facts and circumstances within the officer's knowledge," and determine whether they "are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Sawyer*, 224 F.3d 675, 678–79 (7th Cir. 2000). This determination "involves examining the totality of the circumstances in a

common sense manner." *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003).

In light of the facts known to Stanfield at the time of the stop, and under the totality of the circumstances, it was reasonable for Stanfield to believe that Tapley was speeding. At his deposition, Stanfield testified that he saw Tapley driving northbound on Clinton "at a very high rate of speed." (R. 16-5 at 43–44.) He further testified that he could hear Tapley's engine rev as Tapley drove away. Although Stanfield admitted that he did not know Tapley's exact speed, he estimated it to be in the 40- to 50-mile-per-hour range. In any event, Stanfield noted that he had difficulty catching Tapley, and had to drive about 10 miles per hour over the limit to do so. When Stanfield finally stopped Tapley, the two discussed Tapley's excessive speed.

Through this evidence, the officers carried their summary-judgment burden to produce evidence showing that Tapley was speeding. This evidence is undisputed. Tapley now tries to concoct a dispute by pointing out that "[Stanfield] admitted in his deposition that he did not know how fast Tapley was going." (R. 18 at 10–11.) But cherry picking statements from Stanfield's deposition testimony and saying what we already know doesn't create a dispute. The context of Stanfield's testimony clearly shows that he believed that Tapley was speeding, even though he didn't know Tapley's exact speed. To survive summary judgment, Tapley should have denied that he was speeding through deposition testimony, an affidavit, or some other means. Tapley never denied this. And his failure to make this denial constitutes a failure to deny the existence of probable cause. The evidence in the record thus shows that there was probable cause to stop Tapley for speeding.

And because there was probable cause to stop Tapley for this reason, Tapley's entire illegal-seizure claim fails. This is true, even though the officers arguably had no probable cause to stop Tapley for loud music or arrest him for obstruction and resisting arrest. Indeed, we do not consider an officer's subjective intentions when determining whether he had probable cause to make a stop. *Whren*, 517 U.S. at 813. As long as the officer had probable cause to believe that the driver committed a traffic violation, the stop is constitutionally permissible, even if the officer's real reasons for the stop lack probable cause. *Valance v. Wisel*, 110 F.3d 1269, 1275 (7th Cir. 1997); *see Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014) ("The Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law.").

This rule equally applies to arrests: If there is probable cause to believe that a person has committed a crime, it is constitutionally irrelevant whether the officer arrested the person on charges for which there was no probable cause. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause… ."); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[An officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). Because there was probable cause to believe that Tapley was speeding, the officers did not violate Tapley's Fourth Amendment rights when they

stopped him for loud music and arrested him for obstruction and resisting arrest.[7]

Although arresting someone for speeding might be outside the norm, it is constitutionally acceptable. As long as there is probable cause to stop someone for a crime—even a minor one like a traffic offense—the Fourth Amendment permits an arrest. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002) (en banc).

Speeding is a crime in Illinois. 625 ILCS 5/11-601. The officers had probable cause to stop and arrest Tapley for this crime. For that reason, Tapley's illegal-seizure claim fails. Accordingly, the district court properly dismissed that claim on summary judgment.

### III. CONCLUSION

For the reasons above, we DISMISS Tapley's appeal of the 2012 case (12-cv-1339), and AFFIRM the district court's grant of summary judgment in the 2015 case (15-cv-1051).

---

[7] Tapley notes that the district court denied summary judgment on his claim in the 2012 case. He argues that this denial necessarily creates a genuine issue for trial. Not so. The district court denied summary judgment in the 2012 case because there were disputes about probable cause for loud music, obstruction, and resisting arrest. But in the 2015 case, the officers argued for the first time that there was probable cause for speeding. The district court granted summary judgment for that reason. We take no issue with the divergent rulings in the two cases.