In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3464

MICHELE NISCHAN,

*Plaintiff-Appellant,*

*v.*

STRATOSPHERE QUALITY, LLC; FCA US LLC f/k/a CHRYSLER GROUP LLC; and ABBAS SABBAH,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 13-CV-50389 — **Frederick J. Kapala**, *Judge.*

ARGUED APRIL 13, 2017 — DECIDED AUGUST 2, 2017

Before POSNER, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Michele Nischan alleges that she was fired from her job for filing a sexual-harassment complaint. Consequently, she brought a litany of claims in the Northern District of Illinois, suing three defendants: Stratosphere Quality, LLC—her employer; Chrysler Group LLC—her employer's client; and Abbas Sabbah—her purported harasser. The district court dismissed her claims.

We respectfully disagree with the court's decision regarding Nischan's sexual-harassment claim against Stratosphere: Nischan offered sufficient evidence supporting that claim to avert Stratosphere's motion for summary judgment. And to that extent, we reverse and remand the case. But we otherwise affirm.

## I.    BACKGROUND

Stratosphere provides third-party inspection and quality-control services to car manufacturers. One of Stratosphere's major clients was Chrysler. As relevant here, Chrysler hired Stratosphere to inspect thousands of cars at a large parking lot in Belvidere, Illinois. Stratosphere also provided services to six other companies in the Belvidere area.

On June 5, 2012, Stratosphere hired Nischan as a car inspector. Her formal position was "team lead." A month later, Stratosphere promoted her to "project supervisor." As a project supervisor, Nischan reported directly to her supervisor Davina Turluck. Turluck, in turn, reported to Jim Harris—an "operations manager" whose job entailed planning for project costs, overseeing and reviewing projects, and responding to customer complaints.

Nischan's work at Stratosphere required frequent contact with a coworker named Sabbah. Sabbah was not a Stratosphere employee. Instead, he worked for Chrysler as a liaison to Stratosphere.

Nischan claims that Sabbah sexually harassed her, and did so relentlessly. The alleged harassment includes Sabbah routinely rubbing his penis on her hip and buttocks; hugging her, while moaning; pressing himself against her breasts, while moaning; commenting that her breasts were

really firm; asking her if her breasts were real and what size they were; asking her whether she liked small, medium, or large penises; asking her on dates, and once promising her a night that she would never forget; putting his arm around her; rubbing her thigh; staring at her breasts; and making uncomfortable eye contact with her.

She further contends that high-level Stratosphere employees knew about the harassment, having witnessed it firsthand. Specifically, she claims that Sabbah once rubbed his erect penis on her in a work trailer in front of Harris and a project supervisor named Michelle Blackman. Nischan says that she then ran out of the trailer crying and that Blackman came out to console her.

The last alleged instance of sexual harassment occurred on September 22, 2012. Nischan claims that Sabbah made a comment about how she would be a lonely empty nester soon because her son was going to leave home and join the Navy. Sabbah allegedly then propositioned her and asked for her phone number. According to Nischan, this was the straw that broke the camel's back: she loudly rebuffed his advance, demanding that he stop bothering her.

Sabbah denies all of these allegations.

Apart from this purported harassment, Nischan had other problems at work, namely with her performance. In August 2012, she made numerous mistakes, causing Turluck and Harris to intervene and provide direction. By September 2012, Turluck and Harris had "completely lost faith in [Nischan's] ability to perform the tasks associated with being a [project supervisor]." (R. 83-10 at 2.) So they decided to demote her back to the position of team lead.

But on September 24, 2012, Nischan had another slipup that caused Turluck and Harris to "change the course of action [they had] decided on." (R. 83-16 at 3.) While on the lot, Nischan was demonstrating to her crew how to inspect a vehicle's brake-line clips for defects. But instead of checking near the wheels (where the clips are located), she popped the hood. She admitted that this was a "pretty serious" mistake and a major safety issue. (R. 106-1 at 188.)

What's worse, she made this mistake in front of Sabbah. Consequently, Sabbah demanded that Stratosphere remove her from the lot because he did not "trust her inspecting vehicles." (R. 83-16 at 2.) It took two days and multiple protests, but on September 26, 2012, Stratosphere complied with Sabbah's request.

Stratosphere, however, did not fire Nischan; rather, Turluck told her to contact the scheduling department to see if there was work at another lot in Belvidere. But she chose to file for unemployment instead.

On October 8, 2012, Nischan lodged a sexual-harassment complaint with Stratosphere. Stratosphere subsequently turned the matter over to its legal counsel.

On December 20, 2013, Nischan sued Stratosphere, Chrysler, and Sabbah in the Northern District of Illinois. Her complaint charges the defendants with sexual harassment, sex discrimination, and retaliation in violation of both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA"). The complaint also asserts Illinois common-law claims for intentional infliction of emotional distress and battery.

On September 23, 2014, the district court partially granted the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), disposing of all Title VII claims against Sabbah, the IHRA sexual-harassment and sex-discrimination claims against Sabbah, the battery claim against Stratosphere, and the intentional-infliction-of-emotional-distress claims against all of the defendants. The court subsequently reinstated the IHRA sexual-harassment claim against Sabbah.

On January 11, 2016, the court granted the defendants' motions for summary judgment under Federal Rule of Civil Procedure 56, dismissing the remaining Title VII and IHRA claims. The court then relinquished jurisdiction over the state-law battery claims against Chrysler and Sabbah.

Nischan timely appealed.

## II.   ANALYSIS

On appeal, Nischan challenges the district court's grant of the defendants' motions to dismiss and for summary judgment, disposing of her claims for sexual harassment, sex discrimination, retaliation, intentional infliction of emotional distress, and battery.

We review these decisions *de novo*. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 544 F.3d 752, 756 (7th Cir. 2008). Regarding the claims dismissed under Rule 12(b)(6), we accept all well-pled facts as true and construe all inferences in the nonmovant's favor, granting the motion only when the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289–90 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). And regarding the claims dismissed under Rule 56, we construe all facts and reasonable inferences in the non-movant's favor, granting summary judgment only when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Tapley v. Chambers*, 840 F.3d 370, 376 (7th Cir. 2016) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)).

With these standards in mind, we address each of Nischan's dismissed claims in turn.

### A. Sexual Harassment

Nischan's first claim is for sexual harassment. To prevail on this claim, Nischan must show that (1) she endured unwelcome sexual harassment; (2) she was harassed because of her sex; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile work environment; and (4) there is a basis for employer liability. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010). The district court did not address the first three elements, and the parties don't dispute those elements here. The only issue before us is whether "there is a basis for employer liability." *Id*. We address this issue with respect to each defendant.

### 1. Chrysler

Chrysler can incur liability for sexual harassment only if Nischan can "prove the existence of an employer-employee relationship" with Chrysler. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). The problem Nischan faces is that Chrysler was not Nischan's direct employer—Stratosphere was. Even so, "a plaintiff can, under certain

limited circumstances, bring a claim against a defendant who is not [her] direct employer." *Id*. Nischan contends that, although Chrysler was not her direct employer, it had sufficient authority over her to be considered a "joint employer" with Stratosphere.

To test Nischan's theory, we employ a five-factor test, considering the following things:

> (1) extent of the [purported] employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991); *see also Mitchell v. Dep't of Corr.*, 856 N.E.2d 593, 598 (Ill. Ct. App. 2006) (reciting Illinois's similar multifactor test).

After analyzing these factors, it is clear that Chrysler was not Nischan's employer. We begin with the first factor—the right to control and supervise—which is the most important factor for determining whether an employer-employee relationship exists. *Love*, 779 F.3d at 703. Within this factor, the "key powers" are hiring and firing. *Id*. Everyone agrees that Chrysler had no involvement in Nischan's hiring. Nischan nevertheless claims that Chrysler had the power to fire her; moreover, she contends that Chrysler—through Sabbah—used that power to get her removed from the lot.

Not so. As the district court noted, Sabbah could provide only input and recommendations regarding Stratosphere's employees. And Stratosphere had no obligation to comply with these requests, as shown by the fact that it took two days and multiple demands from Sabbah before Stratosphere ultimately decided to remove Nischan from the lot.

True enough, Stratosphere did remove Nischan at Sabbah's behest. Nevertheless, it is very common for service providers to adhere to their client's wishes on personnel decisions. For example, a law firm might comply with a request from a client to remove an associate from a case after the associate missed a filing deadline; or a bank might acquiesce to a demand from a home buyer to remove a lending agent from a mortgage deal when the agent's negligence caused the parties to miss their closing date. In these situations, the associate and the lending agent aren't employees of their respective companies' clients. And this case is no different: Nischan wasn't Chrysler's employee just because Sabbah requested and obtained her removal from the lot.

Regarding supervision, there is some evidence that Sabbah supervised and trained Nischan during her employment. Nevertheless, most of the responsibility for supervision and training belonged to Stratosphere. Stratosphere regulated Nischan's work days and hours and managed her day-to-day assignments. Sabbah, on the other hand, would inspect the finished work product; "[t]his minimal supervision[,] [which] is essentially limited to 'the result to be achieved,' … militates against a finding of control." *Love*, 779 F.3d at 703. Accordingly, the first factor favors Chrysler.

So too does the next factor, which asks whether the employee obtained her skills at work. The record shows that

Nischan learned her inspection skills before she applied to Stratosphere. And although she received additional training at work, she received most of that training from Stratosphere, not Chrysler. This factor thus favors Chrysler.

At summary judgment, Nischan failed to contest the final three factors, so she has lost her ability to do so here. Even so, those factors favor Chrysler: Stratosphere provided Nischan with the tools and equipment necessary to perform her job; Stratosphere paid Nischan and gave her benefits; and Stratosphere assigned Nischan to the lot and had no expectation that Nischan would leave and work for Chrysler once Stratosphere's contract with Chrysler terminated.

These factors show that Chrysler was not Nischan's employer. Accordingly, Nischan's sexual-harassment claim against Chrysler fails.

### 2. *Sabbah*

Nischan voluntarily dismissed her Title VII sexual-harassment claim against Sabbah because there is no individual liability under Title VII. *See Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir. 1996). On appeal, she challenges the district court's dismissal of her IHRA sexual-harassment claim.

This claim fails for the same reason that it failed against Chrysler: Chrysler was not Nischan's employer. The Illinois Human Rights Commission has explained that it "does not have jurisdiction over an individual harasser unless the individual is an employee or agent of a complainant's employer," and that, under those cases, the individual "cannot be liable to [the] [c]omplainant under the [IHRA] for any sexual harassment, regardless of how reprehensible his conduct

may have been." *Christine Pickett v. Sharon Willow Health Care*, 1999 WL 33256273, at *3 (Ill. Human Rights Comm'n May 6, 1999). Because Nischan and Sabbah worked for different companies, Nischan's sexual-harassment claim against Sabbah fails.

### 3. *Stratosphere*

At the outset, Nischan's sexual-harassment claim against Stratosphere fares better than it did against Chrysler and Sabbah because Stratosphere was Nischan's employer. Thus, an employer-employee relationship between Stratosphere and Nischan existed.

Still, Nischan must prove that "there is a basis for employer liability." *Turner*, 595 F.3d at 684. To determine whether she can do this, we must first decide "whether the alleged harassment was perpetrated by supervisors or coworkers." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). If Sabbah was Nischan's supervisor, then Stratosphere is strictly liable for his harassment. *Id*. at 469–70; *see also Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004) (noting that, for strict liability to apply, the plaintiff must show that the harasser "served specifically as *her* supervisor"), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). But if Sabbah was merely a coworker, then Stratosphere is liable only if it was "negligent either in discovering or remedying the harassment." *Vance*, 646 F.3d at 470 (quoting *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004)).

Nischan contends that Sabbah was her supervisor. Under Title VII, a supervisor is one with "the power to directly affect the terms and conditions of the plaintiff's employment."

*Jajeh v. Cty. of Cook*, 678 F.3d 560, 568 (7th Cir. 2012) (quoting *Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 848 (7th Cir. 2008)). This power includes "the authority to hire, fire, promote, demote, discipline or transfer a plaintiff." *Id*. (quoting *Rhodes*, 359 F.3d at 506).

As noted above, Sabbah did not possess this authority. Indeed, he had no power to affect the terms and conditions of Nischan's employment; all he could do was make recommendations regarding Stratosphere personnel decisions— recommendations that Stratosphere did not have to honor. Moreover, although he had limited authority to review Nischan's work and provide occasional on-the-job training, the record shows that Turluck and Harris were primarily responsible for supervising and training Nischan: they are the ones who promoted her, disciplined her when she made mistakes, and ultimately removed her from the lot. Because Sabbah was not Nischan's direct supervisor, Stratosphere is not strictly liable under Title VII.

Nor is Stratosphere strictly liable under the IHRA. True enough, in *Sangamon County Sheriff's Department v. Illinois Human Rights Commission*, the Illinois Supreme Court held an employer strictly liable for a supervisory employee's harassing conduct even though the harasser was not the victim's direct supervisor. 908 N.E.2d 39, 45 (Ill. 2009). That the harasser possessed general supervisory powers was enough to make the employer strictly liable. *Id*. The court reasoned that "[t]here is no language in the [IHRA] that limits the employer's liability based on the harasser's relationship to the victim." *Id*.

*Sangamon County*, however, is distinguishable. There, the harasser and the victim worked for the same employer. But

here, Sabbah worked for Chrysler, not Stratosphere. And Nischan cites no authority suggesting that a nonemployee could be a supervisor for purposes of imposing strict liability on an employer. Nor could we find any. Because Sabbah was not Nischan's supervisor for purposes of either Title VII or the IHRA, Stratosphere is not strictly liable for Sabbah's alleged harassment.

That doesn't mean Stratosphere is off the hook. Under both Title VII and the IHRA, an employer is liable for the harassment of a nonemployee or nonsupervisory employee if it was "negligent either in discovering or remedying the harassment." *Vance*, 646 F.3d at 470 (quoting *Williams*, 361 F.3d at 1029); *see* 775 ILCS 5/2-102(D) ("[A]n employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.").

To prove negligence, an employee usually must make a "concerted effort to inform the employer that a problem exists." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004) (quoting *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999)). This would include lodging a complaint with human resources or telling high-level management about the harassment. Nischan didn't do that. Indeed, the record shows that Nischan made no formal complaint to Stratosphere until October 8, 2012—almost two weeks after Stratosphere removed her from the lot.

Nevertheless, Stratosphere still could be liable if it knew or should have known of the harassing conduct yet failed to act. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 799–800 (1998). In these cases, the employer is charged with having

constructive notice of the harassment. *Hrobowski*, 358 F.3d at 478. Generally, for constructive notice to attach, the notice must "come to the attention of someone who … has under the terms of his employment … a duty to pass on the information to someone within the company who has the power to do something about it." *Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997). Once that person learns of the sexual harassment, the employer is considered to be on notice even if the victim never reported the harassment. *Cf. Hrobowski*, 358 F.3d at 478 ("[A]n employer could be charged with constructive notice where the harassment was sufficiently obvious.").

Nischan contends that the evidence in the record supports her argument that Stratosphere had constructive notice. We agree.

Nischan testified at her deposition that Sabbah approached her in a work trailer and rubbed his penis on her while it was erect. She further testified that two Stratosphere employees—Blackman and Harris—were in the trailer when this happened. Nischan claims that she then ran out of the trailer crying and that Blackman came out to console her. Blackman submitted an affidavit supporting Nischan's version of the story.

Blackman, like Nischan, was a project supervisor. As such, Stratosphere required her to take immediate action by reporting Sabbah's conduct. Specifically, Stratosphere's employee handbook provides that "[a]ny employee with managerial or supervisory responsibility who witnesses or is otherwise aware of possible harassment … must report the conduct immediately to that employee's supervisor/manager, the V.P. of Human Resources or Employee Relations Manager or the Chief Operating Officer." (R. 83-4 at 16.)

Admittedly, as the dissent notes, Blackman held the same low-level "supervisor" title that Nischan held. Nevertheless, Stratosphere's handbook requires "[a]ny employee with … supervisory responsibility" to report observed instances of possible harassment. (*Id*.) Stratosphere is accountable to the standard of care that it created for itself. Because Stratosphere's rules required Blackman to report the sexual harassment that she observed, Stratosphere had constructive notice of the harassment. *See Young*, 123 F.3d at 674.[1]

Stratosphere also received notice through Harris. Harris was an operations manager, whom Stratosphere's counsel described at oral argument as Nischan's boss's boss. Like Blackman, Harris had the duty under the employee handbook to report any observed sexual harassment.

Nischan testified at her deposition that Harris was present in the work trailer when the alleged harassment occurred. But she waffled a bit when asked whether he saw anything, saying, "I don't know if they witnessed. I don't know what they witnessed." (R. 106-1 at 143.) Thereafter, Harris submitted an affidavit, claiming that he "did not witness any conduct by [Sabbah] that [he] believed constituted sexual harassment." (R. 83-26 at 3.) The district court found

---

[1] The dissent also suggests that Nischan never raised the argument that Blackman's knowledge put Stratosphere on constructive notice with the district court, and thus, the argument is waived. We disagree, concluding that Nischan did enough to circumvent waiver. At summary judgment, Nischan claimed that Blackman witnessed Sabbah harass her in the trailer and saw her run away in tears. Nischan's deposition testimony supports this claim. The district court acknowledged Nischan's claim but nevertheless determined that the evidence didn't establish whether Harris also witnessed the incident.

that Nischan's and Harris's testimonies were consistent: Harris might not have witnessed the harassment even though he was in the trailer.

Even so, Nischan testified throughout her deposition that Harris knew about the harassment. (*E.g.*, R. 106-1 at 165, 167.) Moreover, immediately following her "I don't know if they witnessed" admission, in the same breath, she qualified her answer, saying, "Well, actually, yes, because Michelle Blackman came up to me and she's, like, I can't believe what [Sabbah] just did." (R. 106-1 at 143.) Nischan's "[w]ell, actually, yes" qualification arguably neutralized her admission.

In any event, deponents often misspeak and make mistakes, and competent advocates can expose those errors through skillful cross-examination at trial. But at the summary-judgment stage, we construe all evidence in the record in Nischan's favor. *See Tapley*, 840 F.3d at 376. So construed, the evidence shows that Harris's knowledge of the harassment is a genuine issue of material fact for the jury to resolve at trial.

Nischan has offered sufficient evidence to show that Stratosphere had constructive notice. Accordingly, the district court's conclusion that Nischan failed to provide a basis for employer liability was erroneous.

*B. Sex Discrimination*

Nischan's second claim is for sex discrimination. The basis for this claim is that similarly situated male employees did not suffer the same "harassing conduct and ostracism" that she suffered. (Appellant's Br. at 37.) We do not see how this claim is any different from her sexual-harassment claim. To the extent that the two claims are the same, see above.

Even assuming that Nischan has made a distinct claim, it fails nonetheless. To prevail on a sex-discrimination claim, Nischan must offer evidence showing that she suffered an adverse employment action because of her sex. *See Ortiz*, 834 F.3d at 765 (Title VII); *Kalush v. Ill. Dep't of Human Rights Chief Legal Counsel*, 700 N.E.2d 132, 141 (Ill. App. Ct. 1998) (IHRA). This she has not done. Indeed, no evidence in the record suggests that the defendants treated male employees more favorably than female employees. To the contrary, the facts suggest that the defendants treated both males and females alike. For example, Stratosphere agreed to relocate Harris because Sabbah no longer wanted him to oversee operations at the lot. Because there is no evidence supporting Nischan's sex-discrimination claim, that claim fails.

*C. Retaliation*

Nischan's third claim is for retaliation. The basis for this claim is that the defendants removed her from the lot because of her sexual-harassment complaint. To prevail on this claim, Nischan must show that "she engaged in statutorily protected activity and was subjected to [an] adverse employment action as a result of that activity." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015); *All Purpose Nursing Serv. v. Ill. Human Rights Comm'n*, 563 N.E.2d 844, 850 (Ill. App. Ct. 1990) (reciting the IHRA's similar standard).

Undeniably, lodging a sexual-harassment complaint is a statutorily protected activity. *See Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003). The problem with Nischan's claim, however, is that Nischan lodged no complaint until *after* Stratosphere removed her from the lot.

Admittedly, there is evidence that Stratosphere knew about Nischan's harassment before removing her. But that evidence shows that Stratosphere learned of the harassment by witnessing it, not by receiving a complaint from Nischan. Because there is no evidence supporting Nischan's claim that the defendants retaliated against her because she engaged in a protected activity, that claim fails.

### D. Intentional Infliction of Emotional Distress

Nischan's fourth claim is for intentional infliction of emotional distress. To prevail on this claim, Nischan must prove that (1) Sabbah's conduct was outrageous, (2) Sabbah intended to inflict severe emotional distress, and (3) Sabbah's conduct in fact caused severe emotional distress. *See Schiller v. Mitchell*, 828 N.E.2d 323, 333 (Ill. App. Ct. 2005). The district court granted the defendants' motion to dismiss this claim, holding that the IHRA preempted it.

The IHRA is the exclusive remedy for civil-rights violations. *See* 775 ILCS 5/8-111(D). It "preempts tort claims that are 'inextricably linked' to allegations of sexual harassment." *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002) (citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22–23 (Ill. 1997)). To determine whether claims are "inextricably linked," we ask whether the plaintiff can establish "a basis for imposing liability on defendants … without reference to the legal duties created by the [IHRA]." *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009).

Nischan cannot do this because her intentional-infliction-of-emotional-distress and IHRA claims are one and the same. As the district court put it, "[t]he alleged extreme and outrageous conduct is the sexual harassment and retaliation

that constitutes her IHRA civil rights claims such that without these allegations plaintiff would have no [intentional-infliction-of-emotional-distress] claim." (R. 59 at 4.) Indeed, if we were take the civil-rights allegations out of the complaint, no claim for intentional infliction of emotional distress would remain. *See Schroeder v. RGIS, Inc.*, 992 N.E.2d 509, 518–19 (Ill. App. Ct. 2013). Because the facts supporting Nischan's tort claim are identical to those supporting her IHRA claim, the two claims are inextricably linked. *See Quantock*, 312 F.3d at 905. The IHRA thus preempts Nischan's claim.

*E. Battery*

Nischan's final claim is for battery. Only Stratosphere moved to dismiss this claim.[2] The district court granted Stratosphere's motion, holding that the Illinois Workers' Compensation Act's exclusivity rule barred the claim.

The Workers' Compensation Act is the exclusive remedy for accidental injuries transpiring in the workplace. *See Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225 (Ill. 1990). To circumvent this exclusivity rule, Nischan must demonstrate that her injury (1) "was not accidental," (2) "did not arise from her employment," (3) "was not received during the course of her employment," or (4) "is not compensable under the Act." *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1016 (7th Cir. 1997) (citing *Meerbrey*, 564 N.E.2d at 1226).

---

[2] As noted above, because the district court had dismissed all of Nischan's federal-law claims against Chrysler and Sabbah, it relinquished jurisdiction over her state-law battery claims against them.

None of these exceptions applies. Specifically, the second and third exceptions are inapplicable because it is undisputed that Nischan's alleged injury happened at Stratosphere in the course of her employment.

The first exception doesn't apply, either. Injuries resulting from a coworker's intentional tort are accidental from the employer's perspective unless the employer commanded or expressly authorized the tort. *Meerbrey*, 564 N.E.2d at 1227. Although Stratosphere might have known about Nischan's harassment, that's a far cry from saying that Stratosphere commanded the abuse. Because there is no such evidence, Nischan cannot rely on this exception.

Finally, the fourth exception is inapplicable because the Act compensates employees for injuries suffered due to a coworker's sexual assault. *See Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 324 (7th Cir. 1992).

Accordingly, the Workers' Compensation Act bars Nischan's battery claim against Stratosphere.

## III.   CONCLUSION

The district court properly dismissed all of Nischan's claims against Chrysler and Sabbah. But the court erred in dismissing Nischan's sexual-harassment claim against Stratosphere on the ground that Nischan failed to provide a basis for employer liability. That claim may proceed to trial on a negligence theory so long as Nischan can withstand summary judgment on the claim's other elements.

The district court's judgment is thus AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.

MANION, *Circuit Judge*, concurring in part and dissenting in part.

Because the district court has written a comprehensive and thorough order in which I can find no error, I would affirm the dismissal of Michele Nischan's sexual harassment claim against Stratosphere. I agree with our court's opinion on all other issues, but I do not agree that Nischan has alleged sufficient facts to sustain a finding that Stratosphere was on constructive notice that Nischan was being sexually harassed by Sabbah. According to Nischan's testimony, Sabbah, who was an on-site supervisor employed by Chrysler, sexually harassed her in several disgusting ways on an almost daily basis. Nischan's problem is she did not report this harassment to Stratosphere until sometime in late October after she was no longer employed by the company. There is no dispute that Stratosphere did not have *actual* notice of Sabbah's alleged conduct.[1] It is evident also that Nischan's performance at work was very poor. She made lots of mistakes and seemed not to understand the scope of her duties. Inevitably, she was transferred and terminated after failing to show up at the new site.

Nischan's case thus stands or falls based upon the incident in the trailer, and whether Stratosphere was on constructive notice of her alleged victimization. The court graphically describes Nischan's testimony where Sabbah approached her

---

[1] The district court does note that Nischan alleges a phone call to Stratosphere on June 22, 2012, but there is no evidence that the message Nischan left was in any way a complaint about sexual harassment. Ironically what this phone call does show is that she knew the number to call for any kind of complaint, a complaint which she never made, instead tolerating Sabbah's disgusting behavior for several more weeks.

in her work trailer and rubbed and groped her. Nischan alleges that in the work trailer were two other Stratosphere employees—Blackman and Harris. Blackman held the same low-level "supervisor" title as Nischan. While Nischan does waffle between saying she was sure Blackman saw the groping incident and that she had no way of knowing if Blackman saw it, we can assume Blackman did see it. Even so, Blackman was not Nischan's supervisor and had no duty to report: this fatal defect is perhaps why Nischan simply did not rely upon the argument that Blackman's knowledge put Stratosphere on constructive notice. Blackman's general duty to report sexual harassment cannot be assumed on appeal to apply to non-Stratosphere employees such as Sabbah. The district court had no opportunity to judge the evidence on this point, because this factual determination was not relevant to the decision before it. In other words, the argument that Blackman witnessing Sabbah's assault of Nischan constituted constructive notice to Stratosphere is raised for the first time on appeal, and is thus waived. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("[A] party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms."). As the district court order makes clear, the allegation that Blackman witnessed the groping in the trailer was put forward to suggest that *Harris* must have also witnessed the event. *Nischan v. Stratosphere Quality*, No. 13 C 50389, at fn. 14 (N.D. Ill. Jan. 1, 2016) (order granting summary judgment). Blackman was not alleged to be a hook for constructive notice to Stratosphere. Nowhere was the district court presented with the argument that Stratosphere was negligent in failing

to remedy Nischan's harassment because Blackman was bound by an employee policy that mandated her to report sexual assaults by non-employees.

Harris, on the other hand, actually had supervisory responsibilities over Nischan, and the claim that Harris saw the trailer incident forms the sole factual basis for Nischan's preserved constructive notice claim against Stratosphere. Nischan thinks that since Harris was in the work trailer, he *should* have witnessed this. Certainly Stratosphere could have been on actual notice of Nischan's sexual harassment if she had said something to Harris about what was going on. Instead, she ran out of the trailer followed by Blackman and cried outside while Blackman consoled her. Critically, there is not even a clear allegation that Harris saw Sabbah's behavior or Nischan's distress. As the district court thoroughly analyzed, there is no allegation that Harris saw *anything*. Therefore, I totally agree with the district court's thorough analysis of the incident and agree with the district court that Stratosphere did not have actual or constructive notice of Sabbah's disgusting behavior. I would completely affirm the district court's order.