NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 16, 2018[*]
Decided January 22, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1285

| | |
|---|---|
| RICHARD LEWIS, <br>     *Plaintiff-Appellant,* <br><br> *v.* <br><br> MICHAEL STEPHENS, et al., <br>     *Defendants-Appellees.* | Appeal from the United States District Court for the Western District of Wisconsin. <br><br> No. 15-cv-51-jdp <br><br> **James D. Peterson**, <br> *Chief Judge.* |

**O R D E R**

Staff at the Columbia Correctional Institution strip searched Richard Lewis after he threatened self-harm. He then brought suit under 42 U.S.C. § 1983, arguing that prison officials violated the Fourth and Eighth Amendments during the search. He challenges the entry of summary judgment in favor of the defendant who ordered the search, and the denial of his request for counsel at the trial of his claim against the defendant who searched him. On this record, no rational jury could find that the first defendant violated

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Lewis's rights. And Lewis has not supplied us with a trial transcript, so we cannot review the denial of his request for counsel at trial. We therefore affirm.

The strip search occurred in October 2014, while Lewis was in segregation. He stood on the sink in his cell with a bedsheet tied around his neck, threatening to hang himself. He eventually stepped down from the sink and was placed in observation status. Under Wisconsin Administrative Code § DOC 306.17.02, an inmate whose status within segregation changes must undergo a strip search. After entering observation status, Lieutenant Theodore Anderson ordered staff to take Lewis to the shower area, the most private part of the segregation unit, for a strip search. At first Lewis agreed to comply with a "self-directed" search, in which he would follow instructions to remove his own clothing and move his body parts. But then Lewis said, "You will have to fight me … I'm going to make you suit up and gas and taze me."

Because Lewis resisted, Anderson ordered three corrections officers to conduct a video-recorded, staff-assisted search. *See* Wis. Admin. Code § DOC 306.17.02. In this kind of search, the inmate's arms and legs are cuffed while two officers stand on either side of the inmate to hold him in place. A third officer removes the inmate's clothing. The inmate's mouth, hair, ears, fingers, armpits, feet, and toes are then checked. Bladed hands (a technique in which the fingers are pressed together while the palms and fingers are kept even) are used to check underneath the inmate's penis, scrotum, and between the inmate's buttocks. No digital penetration is involved.

Sergeant Michael Stephens conducted the staff-assisted search, which lasted five minutes. The only fact dispute concerns the manner in which Stephens searched Lewis's buttocks. Lewis swears that while he was facing the wall, Stephens pushed his finger inside Lewis's anus. Lewis then said, "man, that's sexual harassment, man. You're not suppose[d] to spread my cheeks … I could have squatted." Another inmate, who was in a nearby cell and aware of the search, yelled something about a "sexual assault." Unlike Lewis's sworn affidavit, his internal grievance denies any digital penetration. And Stephens swears that he spread Lewis's buttocks using only the bladed-hand technique. The video did not resolve this dispute because the officers who surrounded Lewis blocked the camera's view. When the search ended, Anderson gave Lewis a towel to wrap around his body. Lewis was then placed back in a cell.

Lewis sued Anderson, Stephens, and the two officers who held Lewis during the search. Lewis asked for counsel, but the district judge denied his request because he had not shown that he could not obtain an attorney on his own. After discovery, the court granted the defendants' motion for summary judgment for all defendants except

Stephens. It reasoned that a strip search was justified but a fact dispute about the manner in which Stephens conducted it required a trial.

Before trial Lewis asked again for recruited counsel. He now supplied evidence that he was unable to obtain counsel, suffered from post-traumatic stress disorder (from being shot three times), and would have trouble presenting evidence and examining witnesses. To establish the last point, he attached an affidavit from another inmate who swore that he had drafted the complaint and other court papers. The judge denied the motion without addressing this affidavit. The judge explained that Lewis had only "one task for trial: to tell his side of the story about what happened during his strip search." The PTSD, the judge continued, would not affect his ability to testify. After a two-day jury trial, the jury returned a verdict for Stephens.

On appeal, Lewis first challenges the grant of summary judgment to Lieutenant Anderson. He argues that Anderson violated the Fourth and Eighth Amendments by ordering a staff-assisted strip search rather than a self-directed one, and by conducting the search in the shower area in view of other officers and a nearby inmate.

Anderson did not violate the Fourth Amendment. Under the Fourth Amendment, we balance "the significant and legitimate security interests of the institution against the privacy interests of the inmate." *Canedy v. Boardman*, 16 F.3d 183, 186 (7th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 560 (1979)). Lewis has not furnished any evidence that Anderson ordered the search for a non-penological reason. Moreover, a jury has already ruled that in carrying out Anderson's order, Stephens conducted the search in a reasonable manner. Given these facts and Lewis's diminished privacy rights as an inmate, *see Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984), we conclude that the search was reasonable.

That brings us to the Eighth Amendment. *See Hudson*, 468 U.S. at 530; *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998). "[S]trip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures" violates the Eighth Amendment. *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Only those searches that are "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification' are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (quoting *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987)).

Applying these principles, we conclude that no reasonable jury could find that Anderson violated the Eighth Amendment by ordering the staff-assisted strip search. Anderson ordered the search for a legitimate penological reason: to protect prison officials and Lewis from harm after Lewis stopped complying and vowed to fight any

officer who tried to search him. On appeal Lewis replies that he filed an inmate complaint a week earlier about Anderson denying Lewis a smock and mat. He argues that a jury could rationally infer that Anderson ordered the search in retaliation for that grievance. He is incorrect. Lewis has not supplied evidence that Anderson even knew about the grievance. And anyway "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). Thus no jury could find that in ordering the search Anderson violated the Eighth Amendment.

We also conclude that Anderson could not be liable for the *manner* in which others conducted the search. To survive summary judgment on that type of Eighth Amendment claim, Lewis must supply evidence that Anderson ordered others to search him in a "harassing manner intended to humiliate and cause psychological pain." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). He has not. Anderson ordered that Lewis be taken to the most private part of the segregation unit, the shower area. The video record shows that he faced a wall and was surrounded by officers who substantially blocked the view of others, including a nearby inmate. Although Lewis swears that Stephens penetrated his anus, as we said earlier, Lewis has furnished no evidence that Anderson ordered this. Finally, the search lasted only five minutes, and at the end Lewis had a towel wrapped around his lower body. Under these circumstance, no rational jury could conclude that Anderson ordered that the search humiliate Lewis.

Lewis last contends that the judge abused his discretion in refusing to recruit counsel for him before his trial against Stephens, but this argument fails. Lewis notes that in evaluating his request, the judge never addressed his "explanation that another inmate helped him draft the very documents that the court looked to for evidence of his capacity to litigate." *Robinson v. Scrogum*, 876 F.3d 923, 925 (7th Cir. 2017) (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). But even if the judge should have addressed this point, for us to reverse Lewis must show that he was prejudiced, *see Pruitt*, 503 F.3d at 659. He cannot because he has not provided us with a trial transcript. Lewis knew that he needed this transcript, *see* Federal Rule of Appellate Procedure 10(b)(2), for he asked us to order the district court to have the court reporter prepare it. We denied his motion, explaining that he must first ask the district court to order the transcript before coming to us. *See* FED. R. APP. P. 10(b)(1)(A)(iii). He ignored our instruction. Therefore we cannot meaningfully review whether he was prejudiced at trial without counsel. *See Tapley v. Chambers*, 840 F.3d 370, 375 (7th Cir. 2016).

AFFIRMED.